USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1410 W. DOUGLAS PITTS AND GLORIA MARTINEZ, Plaintiffs - Appellants, v. UNITED STATES OF AMERICA, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and DiClerico,* District Judge. ______________ _____________________ Lisa R. Daugherty, with whom Thomas E. Scott and Davis, __________________ ________________ ______ Scott, Weber & Edwards were on brief for appellants. ______________________ Robert D. Kamenshine, Attorney, Appellate Staff, Civil ______________________ Division, Department of Justice, with whom Frank W. Hunger, ________________ Assistant Attorney General, Guillermo Gil, United States ______________ Attorney, and Barbara L. Herwig, Attorney, Appellate Staff, were __________________ on brief for appellees. ____________________ April 8, 1997 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. TORRUELLA, Chief Judge. Plaintiffs-appellants were TORRUELLA, Chief Judge.  ___________ mistakenly arrested by federal drug enforcement agents at the airport in San Juan, P.R. in April 1993. They filed actions for tort damages against four individual federal agents pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of ______ _____________________________________________________ Narcotics, 403 U.S. 388 (1971), and against the United States _________ under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), 2671 et seq. On February 13, 1996, the district court dismissed _______ plaintiffs-appellants' complaint in its entirety as time-barred under the applicable federal and Puerto Rico statutes of limitations. We affirm.  BACKGROUND BACKGROUND On April 21, 1993, appellants W. Douglas Pitts and Gloria Mart nez were approached by defendant Jefferson Moran, a plain-clothed Drug Enforcement Agency ("DEA") agent, in the airport in San Juan and informed that they were under arrest. Three other DEA agents surrounded them, handcuffed them, and transported them to DEA headquarters. Only after being fingerprinted and photographed, appellants claim, did co- defendant DEA agent Edward Hern ndez inform them of the reason for their arrest. Apparently two witnesses identified Pitts as the man who had given them a package of heroin earlier that day. Pitts was questioned and his briefcase was searched; Mart nez was allegedly strip-searched. Appellants were released from detention approximately six hours after being arrested.  Appellants' complaint alleged that they were physically and -2- verbally abused and sought damages on a number of legal grounds.1 Because the issue on appeal is whether the suit was time-barred, however, we review the details concerning the timing and contents of communications between appellants and governmental agencies after the incident just described. The mistaken arrest occurred on April 23, 1993. The complaint was filed in district court on November 23, 1994. On July 19, 1993, however, appellants' counsel sent a letter to the DEA stating appellants' intent to pursue a claim "against the United States" arising from the actions of DEA agents, and requesting damages and "an apology from your office as well as a reprimand of the agents involved." A response letter from the DEA dated August 6, 1993 stated that the appellants' July 19, 1993 letter did not satisfy the procedural requirements for a claim against the United States under the FTCA.  On August 18, 1993, appellants' counsel sent a second letter to the DEA, followed by a third letter on August 30, 1993, which repeated the appellants' intention to pursue a claim against the government, stated that counsel had been authorized to represent the appellants, and provided the appellants' signatures. The DEA replied to appellants' August 18 letter in a letter dated September 9, 1993, stating that appellants' July 19 and August 18 letters also failed to satisfy the requirements of  ____________________ 1 Plaintiffs' complaint alleged: assault, battery, false imprisonment, intentional infliction of emotional distress, invasion of privacy, unconstitutional search and seizure, and negligence. -3- a "claim" under the FTCA. Appellants' counsel replied by a letter of September 15, 1993 stating that it was the appellants' view that the August 18 letter did indeed constitute a proper claim under the FTCA. Finally, the DEA sent a letter on January 4, 1994 denying the claim against the United States made in appellants' July 19, 1993 letter, and noting that the denial "may be appealed" to a federal district court within six months. More than six months elapsed between January 4, 1994 and the date the complaint was filed, November 23, 1994.2  The district court granted the appellees' motion to dismiss the complaint as untimely under both Puerto Rico's one- year statute of limitations (with regard to the tort claims against the officers) and the FTCA's six-month statute of limitations that runs from the time of the final denial of a claim by the pertinent governmental agency. These letters are at the heart of this appeal because the appellants contend: (1) that Puerto Rico's one-year statute of limitations governing their Bivens action was tolled under the "extrajudicial claim ______ exception" by their letter of August 18, 1993, and did not begin running at least until the Government's denial letter of January 4, 1994; and (2) that the requirement under the FTCA that they file suit against the government within six months of the final  ____________________ 2 In addition, beginning in November 1993, the plaintiffs and the DEA exchanged correspondence regarding appellants' request for the names and identities of the DEA agents involved under the Freedom of Information Act, a series of letters that culminated in a letter of April 10, 1995 from the DEA formally denying appellants' request for information concerning the identities of the unknown agents. -4- denial of their claim does not render their November 23, 1994 complaint time-barred because the government's January 4, 1994 denial letter did not trigger the six-month limitations period. DISCUSSION DISCUSSION I. Claims Against the Agents I. Claims Against the Agents Appellants do not dispute the settled proposition that their claims against Mor n, Hern ndez, and two other unknown DEA agents are subject to Puerto Rico's one-year statute of limitations governing, inter alia, personal injury torts. See __________ ___ P.R. Laws Ann. tit. 31 5298(2) (1991); cf. Ram rez Morales v. ___ _______________ Rosa Viera, 815 F.2d 2, 4 (1st Cir. 1987). Rather, they argue __________ that the period, which would have barred their suit from being brought after April 21, 1994, was tolled under the Puerto Rico tolling statute's extrajudicial claim provision. See P.R. Laws ___ Ann. tit. 31 5303 (1991).3 Specifically, they argue that under the Puerto Rico Supreme Court's interpretation of the extrajudicial claim provision, their claim was tolled from the time of their August 18, 1993 letter to the DEA (stating appellants' "intent to submit a claim against the United States government" and requesting a "reprimand" of the officers) to at least January 4, 1994, the date of the government's letter purportedly denying the claim, at which point, under Puerto Rico law, the one-year period would have been restarted at zero and  ____________________ 3 Section 5303 provides: "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of debt by the debtor." -5- would have begun to run anew. See Rodr guez Narv ez v. Nazario, ___ _________________ _______ 895 F.2d 38, 45 (1st Cir. 1990). The problem with appellants' argument is that their August 18 letter -- like the other letters they sent to the DEA - - did not identify any legal claim against the individual officers, and therefore cannot be deemed to have tolled the statute of limitations as to the suit against the officers. Puerto Rico Supreme Court decisions applying the tolling provision of section 5303 indicate that one of the necessary requirements of an extrajudicial claim for the purposes of tolling is the requirement of "identity." See Galib-Frangie v. ___ _____________ El Vocero de Puerto Rico, 95 JTS 71 at 922 (P.R. 1995); see also ________________________ ________ Kery v. American Airlines, Inc., 931 F. Supp. 947, 951-53 (D.P.R. ____ _______________________ 1995) (summarizing Puerto Rico Supreme Court interpretation of section 5303). The identity requirement means that the same right and the same relief affected by the statute of limitations must appear in the extrajudicial claim. See Nazario, 895 F.2d at ___ _______ 44; Kery, 931 F. Supp. at 954. To satisfy this requirement, the ____ extrajudicial claim must be made against the same debtor or passive subject of the right in question, and not against a third party. Nazario, 895 F.2d at 44 (citing Velilla v. Pueblo _______ _______ ______ Supermarkets, Inc., 111 P.R.R. 732, 734-35 (P.R. 1981)).  __________________ Appellants' August 18 letter, addressed to the associate chief counsel of the DEA, states an intent to make a "claim against the United States government" and also requests an official "reprimand" of the officers involved. It does not assert any -6- legal claims directly against the officers. The letter, therefore, fails to satisfy the requirement of identity for the purposes of the extrajudicial claim doctrine. Appellants, citing the Galib-Frangie decision, argue that the Puerto Rico Supreme _____________ Court has recently ruled that the extrajudicial claim doctrine should be applied liberally. We are not persuaded by this argument, because nowhere in the Galib-Frangie opinion, or, to _____________ our knowledge, in any other recent decision of the Puerto Rico Supreme Court, is there any support for a departure from the well-established rule that an extrajudicial claim must request the same type of relief against the same defendants.4 In fact, in Galib-Frangie, the case relied on by the appellants, the court _____________ iterated that the identity requirement is a necessary condition of an extrajudicial claim under section 5303. Galib-Frangie, 95 _____________ JTS 71 at 922. Moreover, the learned commentary on this civil code provision suggests that an extrajudicial claim must serve as a notice or demand to the "passive subject of said right," here the DEA agents. See Nazario, 895 F.2d at 44 (quoting Spanish ___ _______ civil code commentator Diez Picazo).5 The DEA agents plainly  ____________________ 4 In the case of Zambrana-Maldonado v. Commonwealth, 92 JTS 12 __________________ ____________ (P.R. 1992), for example, the court stated specifically that extrajudicial claims must be read in their totality and in a liberal fashion, and yet also held that the claim must be received by the same debtor of the right who is the defendant in the subsequent lawsuit. Id. at 9171-74. ___ 5 According to Diez Picazo: In principle, claim stands for demand or notice. That is: it is an act for which the holder of a substantive right, addresses the passive subject of said right, demanding that -7- could not be apprised of a damages suit against them as individuals by a letter stating an intention to bring a claim against the government. In the alternative, appellants argue that summary judgment was improper because a question of material fact exists as to whether the individual DEA agents received copies of, or were otherwise informed of, the letters. This argument fails because, even assuming they received copies of the letters, the content of the letters would not put them on notice as to the possibility of being sued individually for damages. These considerations lead us to conclude that the district court properly applied Puerto Rico law in finding the suit against the DEA agents to be time-barred. II. The Claim under the FTCA II. The Claim under the FTCA FTCA claimants must file suit in federal court within six months of the date on which the federal agency to which the claim has been addressed mails notice of final denial of their claim. See 28 U.S.C. 2401(b). Here, it is not disputed that ___ the DEA sent a letter on January 4, 1994 to appellants' counsel stating that, in response to appellants' July 19, 1993 letter, "[t]o the extent that this correspondence can be construed as  ____________________ he adopt the required conduct. The claim, then, is a pretension in a technical sense. Nazario, 895 F.2d at 44 (quoting Diez Picazo). We note as well _______ that the commentary of Diez Picazo, unfavorable to appellants here, was cited as an authority regarding the requirements of an extrajudicial claim in the Galib-Frangie decision, the very _____________ decision appellants argue harkens a change in the extrajudicial claim doctrine. See Galib-Frangie, 95 JTS 71 at 923. ___ _____________ -8- claim [sic] against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. 2671 et seq., such _______ claim is denied." Appellants filed their suit under the FTCA in November 1994, more than six months after the DEA denial letter was mailed, and thus their FTCA claim was properly found to be time-barred. On appeal, two meritless arguments have been proffered. The first is that the January 4 letter cannot be deemed a final denial because it did not specifically address appellants' August 18, 1993 letter. We find, however, that the language of the letter was unambiguous in denying appellants' claim, which was made in both the July 19, 1993 and the August 18, 1993 letters.6 Second, appellants argue that the January 4 letter failed to satisfy regulations governing the content of an FTCA claim denial letter, see 28 C.F.R. 14.9(a), because it did not ___ state that the claimant may "file suit" in a United States District Court within six months.7 We are unmoved by appellants'  ____________________ 6 The August 18 letter was merely a follow-up letter that repeated the allegations and claims made in the July 19 letter, and only added the signatures of appellants Pitts and Mart nez. 7 The regulation at 28 C.F.R. 14.9(a) provides, in pertinent part: The notification of final denial . . . shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than six months after the date of mailing of the notification. -9- argument that the DEA's failure to use the words "file suit" created any confusion. We find that the DEA's statement that "[t]his denial may be appealed to the appropriate United States District Court within six months of this letter," while not using the words "may file suit," adequately satisfied the requirements of regulation 14.9(a) by giving sufficient notice of the six-month limitations period applicable to their right to file suit in district court. Cf. Hatchell v. United States, 776 ___ ________ _____________ F.2d 244, 245-46 (9th Cir. 1985) ("We decline to require any specific verbal formulation to ensure compliance with the regulations governing denial of claims."). CONCLUSION CONCLUSION For the reasons stated in this opinion, the district court's grant of summary judgment to the defendants is affirmed. ________ -10-