# United States Court of Appeals
## For the First Circuit

No. 08-1964

CHARLES SANTANA-CASTRO; FÉLIX SANTANA-CARMONA;
AIDA SANTANA-CASTRO,

Plaintiffs, Appellants,

v.

PEDRO TOLEDO-DÁVILA, Superintendent of the
Puerto Rico Police Department; JOSÉ RAMOS-GONZÁLEZ,
Commander of the Fajardo Region; JOSÉ LEBRÓN-ALICEA,
Supervisor; NELSON TORRES-GONZÁLEZ, Commander of the
Special Operations Unit; JESÚS SÁNCHEZ-ZAVALA, Police Officer;
ISRAEL CANDELARIA-VÉLEZ, Police Officer; JOHN DOE;
DIONISIO MOLINA-PADRÓ, Police Officer,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

---

Before

Lynch, Chief Judge,
Torruella, Circuit Judge,
and Ebel,[*] Senior Circuit Judge.

---

Guillermo Ramos-Luiña, with whom Harry Anduze-Montaño and
José A. Morales-Boscio, were on brief for appellants.
Rosa Elena Pérez-Agosto, Assistant Solicitor General, with
whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-
Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy
Solicitor General, were on brief for appellees.

---

August 27, 2009

---

[*] Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiff-appellants Charles Santana-Castro ("Santana") and his grandparents Félix Santana-Carmona and Aida Santana-Castro filed an action in the United States District Court for the District of Puerto Rico against defendant-appellees Puerto Rico Police Department ("PRPD") officers and their supervisors. Pursuant to 42 U.S.C. § 1983, plaintiffs alleged violations of their constitutional rights under the First, Fourth, Fifth, Tenth, and Fourteenth Amendments as well as claims under Puerto Rico's constitution and civil law.

In their complaint, plaintiffs specifically alleged that four PRPD officers illegally arrested, beat, and incarcerated Santana, causing him physical injuries, and causing him and his grandparents emotional distress. They also claimed that PRPD supervisors were liable under a theory of supervisory liability and that Santana was illegally fired from the PRPD in retaliation for bringing legal action against the PRPD. In response, defendants filed a motion to dismiss for failure to state a claim. The district court initially dismissed some of the claims, and upon a subsequent motion for reconsideration, it dismissed all remaining claims as time-barred. Plaintiffs appeal. After careful consideration, we affirm the district court's dismissal of plaintiff's complaint as untimely.

## I. Background

As this case comes to us as a motion to dismiss, "'we must take all the factual allegations in the complaint as true.'" Maldonado v. Fontánes, 568 F.3d 263, 266 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)). The following facts are based on Santana's complaint and the extrajudicial claim letter he sent to PRPD Superintendent Pedro Toledo-Dávila ("Toledo"), which was attached to the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n.1 (1st Cir. 2001).

Santana worked as a police officer in the PRPD from 2002 to 2007. On June 8, 2006, while off-duty, he had dinner at a restaurant in Luquillo, Puerto Rico. While at dinner, his car was vandalized and his car radio stolen. Upon discovering the damage to his car, Santana met an individual on the street named Angel Cruz-García ("Cruz"), who informed Santana that he had seen two suspicious men in the area with a bag. Thinking they might have been the individuals who damaged the car, Santana and Cruz went to a housing project to look for the men Cruz had seen.

When they could not find the two men Cruz suspected vandalized the car, Santana and Cruz left the housing project. They were then pulled over by Officers Jesús Sánchez-Zavala ("Sánchez") and Israel Candelaria-Vélez ("Candelaria"). A few

-3-

minutes later, Officers Dionisio Molina-Padró ("Molina") and José Lebrón-Alicea ("Lebrón") also arrived at the scene. The four officers searched Santana's car and arrested him and Cruz for possession of crack cocaine. During the arrest, Sánchez and Molina allegedly hit Santana and handcuffed him tightly, causing Santana severe pain and several hematomas. The officers also humiliated Santana, calling him a corrupt officer and a junkie. The officers then brought Santana to the Luquillo Police Station where they kept him incarcerated for fifteen hours without food or medical attention.

The following day, on June 9, 2006, Santana was taken to San Juan Superior Court and charged with possession of illegal drugs and driving without a vehicle registration plate. On July 21, 2006, Santana was suspended from the PRPD without pay. He never returned to work.[1] On February 7, 2007, in a preliminary hearing, a state court judge held that the PRPD officers who stopped Santana and searched his car lacked probable cause. The court dismissed the charges against Santana.

On May 18, 2007, Santana and his grandparents sent a letter through their lawyer to PRPD Superintendent Toledo, who received the letter on May 21, 2007. The letter described the events of June 8 and 9, 2006, including Santana's arrest, beating,

---

[1] Santana received an official letter of termination on September 12, 2007.

-4-

and incarceration by the four officers at the scene, who are all mentioned by name. It also noted that Santana was "summarily expelled" from his job "as a result" of the charges filed against him. The letter stated that "[t]hese actions and/or omissions by the aforementioned agents caused damages and losses," including "severe mental anguish" to Santana's grandparents who had to witness "the injustices committed against their grandson." The letter alleged that "[t]he blows that [Santana] received, the filing of unfounded criminal charges against him, and the publication of all this in the news media, constitute a violation of his civil rights."[2] The letter then requested $1.5 million in damages "as an indemnity for the damages and losses caused by the police officers referred to above."

On September 7, 2007, Santana and his grandparents filed a complaint in federal court against the four officers who had been at the scene of the arrest and also against three supervising officers - Superintendent Toledo, José Ramos-González ("Ramos"), Commander of the Fajardo Region of the PRPD, and Nelson Torres-González ("Torres"), Commander of the Special Operations Unit of the PRPD. On November 21, 2007, the three supervising officers filed a motion to dismiss. On December 21, 2007, plaintiffs filed

---

[2] The letter stated that the claim is "made under the protection of . . . the Constitution of the Commonwealth of Puerto Rico and the United States of America, articles 1802 and 1803 of the Puerto Rico Civil Code, 32 LPRA, secs 5141 and 5142 and the federal Civil Rights Law, 42 USC 1983."

an opposition to the motion to dismiss and leave to file an amended complaint, which was granted by the district court. On January 4, 2008, plaintiffs filed the amended complaint, which again stated claims against the on-scene officers for violating Santana's civil rights and against the supervising officers for supervisory liability. It also included a claim alleging that Santana was fired as a result of his arrest and the charges brought against him, which constituted an illegal termination because the PRPD did not investigate the events of June 8 and 9, 2006 prior to terminating Santana. On April 4, 2008, Lebrón and Molina joined their co-defendants' earlier filed motion to dismiss. On May 7, 2008, Candelaria and Sánchez also joined the motion to dismiss.

On or about May 12, 2008, the district court issued a partial dismissal of the complaint, dismissing the following claims: (1) all claims alleged against the supervising officers; (2) all claims brought under the First, Fifth, and Tenth Amendments; (3) all claims brought against the on-scene officers in their official capacities as police officers; and (4) all claims brought by Santana's grandparents pursuant to § 1983. This order left the claims against the on-scene officers in their personal capacities, pursuant to § 1983 for violations of Santana's Fourth

and Fourteenth Amendment rights, as well as all claims brought under Puerto Rico law against the on-scene officers.[3]

Following the partial dismissal, both parties filed motions for reconsideration. The district court granted defendants' motion and issued an amended opinion and order, dismissing all of plaintiffs' remaining claims with prejudice as time-barred. Plaintiffs timely appeal. For the reasons stated below, we affirm the district court and hold that plaintiffs' extrajudicial letter did not toll the statute of limitations under Puerto Rico law, rendering his complaint untimely.

## II. Discussion

We first consider whether plaintiffs' complaint was properly time-barred. Defendants argue that plaintiffs filed the original complaint after the applicable statute of limitations had run. They further argue that the extrajudicial letter plaintiffs sent to Toledo failed to toll the limitations period. Defendants contend that the letter notified Toledo that he might be sued only in his official capacity as an employee of the PRPD, which is precluded by the Eleventh Amendment. We agree with defendants that the complaint was time-barred, albeit for different reasons.

---

[3] This order did not mention the illegal termination claim raised in the amended complaint.

## A. Applicable Law Governing Statute of Limitations

We review de novo the district court's dismissal of a complaint for failure to state a claim based on statute of limitations grounds. López-González v. Municipality of Comerío, 404 F.3d 548, 551 (1st Cir. 2005). "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting Blackstone Realty LLC, 244 F.3d at 197). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." Id.

Plaintiffs' complaint brought claims under § 1983, which borrows the forum state's statute of limitations for personal injury claims. Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (citing Wilson v. García, 471 U.S. 261, 277-80 (1985)). The parties agree that Puerto Rico's one-year prescriptive period governing tort actions is the statute of limitations applicable to plaintiffs' claims. See id. (citing P.R. Laws Ann. tit. 31, § 5298(2)). While we look to Puerto Rico law to

-8-

determine the applicable prescriptive period, "federal law determines the date on which the claim accrued." Id. at 96. The limitations period "begins to run when the plaintiff 'knows or has reason to know of the injury which is the basis for his claim.'" Id. at 96-97 (quoting Rodríguez Narváez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990)). The "limitations period of actions is a substantive, not a procedural, matter" in Puerto Rico. Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009) (citing García Pérez v. Corporación de Servicios para la Mujer y la Familia, etc., 2008 TSPR 114, 2008 WL 2717833, at *4 (P.R. June 30, 2008)). Thus, we apply Puerto Rico's tolling rules.

Puerto Rico's tolling rules provide three ways that a plaintiff can interrupt the statute of limitations, which, as relevant here, include the sending of an "extrajudicial" letter. See P.R. Laws Ann. tit. 31, § 5303. "[A] letter sent by a tort plaintiff to the tortfeasor, complaining of the tortious conduct and demanding compensation, is an extrajudicial claim that, if timely, interrupts the prescription of the cause of action in tort." Tokyo Marine & Fire Ins. Co. v. Pérez y Cía. de P.R., Inc., 142 F.3d 1, 4-5 (1st. Cir. 1998). We note, however, that an extrajudicial letter will not toll the limitations period "'for all claims arising out of the same facts.'" Municipality of Caguas, 354 F.3d at 97 (quoting Fernández v. Chardón, 681 F.2d 42, 49 (1st Cir. 1982)). The Puerto Rico Supreme Court has limited the tolling

effect of an extrajudicial letter to situations where the letter is "identical" to a subsequently filed complaint. Id. (citing Cintrón v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582 (1990)). This identicality requirement has three components. First, the extrajudicial letter and subsequent complaint "must seek the same form of relief." Id. at 98. Second, "[t]he causes of action asserted [in the complaint] must be based on the same substantive claims" as asserted in the extrajudicial letter. Id. Lastly, "provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds, they must be asserted against the same defendants in the same capacities; new defendants should not be added." Id.

Before we proceed to our analysis as to whether the identicality requirement is met here, we note some tension in the Puerto Rico Supreme Court's approach to identicality and its tolling provisions. On the one hand, it has stated, and we have often repeated, that the "tolling provisions [are] interpreted restrictively against the party invoking their protection." Nieves-Vega v. Ortiz-Quiñones, 443 F.3d 134, 137 (1st Cir. 2006) (quoting Rodríguez Narváez, 895 F.2d at 43); see also Díaz de Diana v. A.J.A.S., 10 P.R. Offic. Trans. 602, 608 n.1 (1980). On the other hand, the Puerto Rico Supreme Court has also stated that extrajudicial claims should be analyzed in [their] "totality and in a liberal fashion," Pitts v. United States, 109 F.3d 832, 835 n.4

-10-

951 (1st Cir. 1997) (citing Zambrana Maldonado v. Commonwealth, 129 D.P.R. 740, 1992 WL 755000 (P.R. Jan. 30, 1992)). Also, consistent with a more liberal approach to tolling, the Puerto Rico Supreme Court has remarked that it favors conservation of rights as "the norm." See Kery v. Am. Airlines, Inc., 931 F. Supp. 947, 952 (D.P.R. 1995); Galib-Frangie v. El Vocero de Puerto Rico, 138 D.P.R. 560, 1995 WL 905884 (P.R. June 6, 1995) ("The prescription of the right is the exception, being its exercise or conservation the norm, because of which the law propitiates the exercise and conservation of rights through the use of prescription's interruptive mechanisms.").

Despite this potentially contradictory guidance, however, the Puerto Rico Supreme Court has not departed from the principle that an extrajudicial letter in order to toll the statute of limitations with respect to subsequent claims must give fair notice of the claims that are subsequently raised. It has explained the term "extrajudicial claim" as follows:

> Our Civil Code has not given to the word "claim" any precise or technical meaning. But this does not exempt us from trying to find it. In principle, a claim stands for demand or notice. That is: it is an act for which the holder of a subjective right, addresses the passive subject of said right, demanding that he adopt the required conduct. The claim is, then, a pretension in a technical sense.

Cintrón, 27 P.R. Offic. Trans. at 592.

-11-

Likewise, we have recognized this important principle in our case law, stating that "[t]he identicality requirement prevents plaintiffs from circumventing the notice function of the statutes of limitations by asserting different claims in belated federal court complaints." Municipality of Caguas, 354 F.3d at 97.

### 1. Identicality and Plaintiffs' Supervisory Liability Claims

We first consider whether plaintiffs' extrajudicial claim letter is sufficiently identical to their subsequent complaint. As to the first identicality requirement, namely whether the same relief was sought, there is little question and, in fact, defendants concede,[4] that plaintiffs sought the same form of relief -- money damages -- both in the letter and in the subsequent complaint. That the letter requested a different amount in damages ($1,500,000) than the complaint (over $4,000,000) is not a problem here because the letter put Toledo on notice of a potential lawsuit for damages. See id. ("Although the amount of damages differs in the two complaints, the allegation of damages in her state complaint gave the defendants the requisite 'fair notice that [they] might be called upon to defend a damages suit . . . .'") (quoting Hernández del Valle v. Santa Aponte, 575 F.2d 321, 324 (1st Cir. 1978) (alteration in original)).

---

[4] Defendants acknowledge that "the letter does meet the first requirement regarding the same form of relief, since money damages are sought in both the extrajudicial claim letter and the complaint."

-12-

Plaintiffs, however, do not fare as well with respect to the second identicality requirement, namely whether the causes of action in the extrajudicial claim and subsequent complaint are based on the same substantive claims. As we have previously stated, Puerto Rico law requires sufficient detail "to put defendant on notice of the general nature of their claims." Id. at 100. Here, we conclude that the extrajudicial letter did not assert a claim of supervisory liability in sufficient detail to meet the second prong of the identicality requirement. We explain.

Plaintiffs' complaint asserted that the subordinate officers had a propensity of violence, that their supervisors knew of this propensity, and they did not act to correct it through retraining, psychological evaluation, or remedial action. As part of the allegation of the subordinate officers' propensity for violence, the complaint referred to "incidents of unwarranted physical violence against citizens."[5] Although the extrajudical letter was addressed to Superintendent Toledo and mentioned § 1983

---

[5] In Maldonado, we noted that "[s]ome recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability." 568 F.3d at 275 n.7 (citing Iqbal, 129 S. Ct. 1937). This concern is not implicated here because plaintiffs do not even allude to supervisory liability in their extrajudicial letter. Further, plaintiffs concede that they do not meet the Iqbal standard with respect to their supervisory liability claim in their complaint.

in its penultimate sentence[6] -- the letter failed to assert, even remotely, the factual allegations supporting supervisory liability that ultimately were raised in the complaint. Instead, the letter recounted plaintiffs' version of the events of June 8 and 9, alleging that the actions and/or omissions of the officers who perpetrated the violence against him caused damages and losses. Further, plaintiffs claimed that the arrest and filing of charges against Santana "tarnished his reputation and violated his dignity" because they were published in the newspapers and broadcast on the radio. Even if we took a "liberal" approach in assessing this second prong, analyzing the letter in its "totality," we cannot conclude that Toledo, or any of the other defendant supervisors, would have been on sufficient notice to defend a supervisory liability claim.

Thus, we conclude that because plaintiffs' extrajudicial letter fails to satisfy the second identicality requirement, the supervisory liability claim as to all defendant supervisors is time-barred.[7]

### 2. Plaintiffs' Claims Against the On-Scene Officers

As to plaintiffs' claims against the on-scene officers, the extrajudicial letter states with "precis[ion] and

---

[6] Once again, the letter states that the claim is "made under the protection of . . . federal Civil Rights Law, 42 USC 1983."

[7] We need not reach the third identicality prong.

specific[ity]," see Fernández, 681 F.2d at 53, the allegations of Santana's arrest, beating, and incarceration without proper medical treatment. However, the letter was addressed only to Toledo and plaintiffs do not allege that the on-scene officers accused of perpetrating the attack knew about the letter or its contents. This is fatal to plaintiffs' claim. Puerto Rico law is clear that the extrajudicial letter "must be addressed to the . . . passive subject of the right, not to third party." See Velilla v. Pueblo Supermarket, 11 Offic. Trans. 732, 734-35 (1981); see also Pitts, 109 F.3d at 835 (citing same principle); Rodríguez-Narváez, 895 F.2d at 44 (same). Plaintiffs have not pointed to any case, nor are we aware of one, where subordinate officers are held to be on constructive notice of claims made against them in an extrajudicial letter to a supervising officer.[8]

### III.  Conclusion

For the foregoing reasons, we hold that the district court properly dismissed plaintiffs' claims as time-barred.[9]

---

[8] Moreover, plaintiffs do not allege that the subordinate officers "affirmatively induce[d] [plaintiffs] to address the extrajudicial claim to the wrong party," potentially excusing plaintiffs from the requirement to address the extrajudicial letter to the correct party. Campos-Matos v. Evanstone Ins. Co., 208 F. Supp. 2d 170, 173-74 (D.P.R. 2002) (citing Velilla for this proposition of law).

[9]  We also affirm the dismissal of plaintiffs' other claims, including their malicious prosecution and wrongful termination claims. First, malicious prosecution cannot be implicated on these facts against these defendants because, although they arrested Santana, the officers were not responsible for bringing charges against him. Second, plaintiffs have waived their wrongful

-15-

**Affirmed**.

termination claim by failing to sufficiently brief the argument in general (or, in specific, their "continuous and uninterrupted violations" theory with respect to this issue) on appeal.  See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 309 (1st Cir. 2002); see McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 23 (1st Cir. 1991) (noting that "the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim").