# United States Court of Appeals
## For the First Circuit

No. 23-1951

REGINA M. THORNTON,

Plaintiff, Appellant,

v.

IPSEN BIOPHARMACEUTICALS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jennifer C. Boal, U.S. Magistrate Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Richard C. Chambers, Jr., with whom Joseph Spinale was on brief, for appellant.

Jonathan Rosenfeld and Michael Lenzi, with whom Wilmer Cutler Pickering Hale and Dorr LLP was on brief, for appellee.

January 16, 2025

**GELPÍ**, **Circuit Judge**.  Plaintiff-Appellant Regina M. Thornton ("Thornton") was employed by Defendant-Appellee Ipsen Biopharmaceuticals, Inc. ("Ipsen") as Associate Director - Patient Safety.  In September 2021, Ipsen implemented a policy requiring its employees to receive COVID-19 vaccinations.  Citing her religious beliefs, Thornton submitted a request for an exemption from the vaccination requirement, which Ipsen denied.  After Thornton did not comply with the vaccination requirement, Ipsen terminated her employment.

Thornton sued Ipsen in the Superior Court of Massachusetts, County of Middlesex, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), and the corresponding Massachusetts law, Mass. Gen. Laws ch. 151B ("Chapter 151B"); the Fourteenth Amendment to the United States Constitution; and the Massachusetts Declaration of Rights ("MDR").  Ipsen removed the case to the United States District Court for the District of Massachusetts and moved to dismiss all counts.  The United States Magistrate Judge who presided over the case with the parties' consent granted Ipsen's motion, dismissing Thornton's complaint.  Thornton appealed.

For the reasons explained below, we **reverse in part** and **affirm in part**.

- 2 -

# I. BACKGROUND

## A. Factual Background

Because "this appeal follows the granting of a motion to dismiss, we draw the relevant facts from the plaintiff's complaint" and "from documentation incorporated by reference in the complaint." Rivera–Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 388 (1st Cir. 2014) (citing Jorge v. Rumsfeld, 404 F.3d 556, 558-59 (1st Cir. 2005)). In reciting the facts, we accept as true all well-pleaded allegations "and draw[] all reasonable inferences in favor of the non-moving party." Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020) (citing Penate v. Hanchett, 944 F.3d 358, 362 (1st Cir. 2019)).

On September 7, 2021, Ipsen implemented a policy requiring its employees to become "fully vaccinated" against COVID-19 by November 1, 2021. Pursuant to the terms of the vaccination policy, employees would be "considered fully vaccinated for COVID-19 two weeks after [the employee] ha[d] received the second dose in a two-dose series (Pfizer-BioNTech or Moderna) or two weeks after they ha[d] received a single-dose vaccine (Johnson and Johnson/Janssen)." Those who failed to provide timely proof of vaccination were subject to termination for cause.

The policy, however, provided a procedure by which employees could request a religious exemption from the vaccination

- 3 -

requirement. To do so, an employee needed to submit an accommodation request form accompanied by "a written statement describing [their] sincerely held religious belief, practice, or observance and how it conflict[ed] with . . . receiving the COVID-19 vaccination." Ipsen reviewed all such "requests on a case-by-case basis."

Thornton, who at the time was employed by Ipsen as Associate Director - Patient Safety, sought a religious exemption from the vaccination requirement on October 26, 2021. In her accommodation request form, she stated the following:

> [B]eing a very private person, this process that requires me to divulge my sincerely held beliefs and personal medical information makes me extremely uncomfortable. Receiving a vaccine (including the [COVID-19] vaccine) goes against my personal, private and sincerely held religious beliefs. Therefore, I am requesting a reasonable accommodation based on my religious convictions. My long standing beliefs are sincerely held and firmly established in my faith, the Holy Bible and my awareness that what God has created is perfect.

On November 2, 2021, Ipsen denied Thornton's request.

Even though the vaccination policy did not provide for an internal appeal process, Thornton still tried to appeal the denial by submitting a letter to Ipsen on November 5, 2021. Therein, she elaborated further:

> I have never had to defend my faith and it is difficult for me to put into words my sincerely held religious beliefs that I hold

in my heart and soul. I demonstrate my sincerely held religious beliefs not only in how I think, but in how I live my life every day. God requires me to follow His Word and His Teachings so that I may live in Grace and have eternal salvation. In practicing my faith, which requires me to keep my body and soul pure to God's standard as He created, I follow God's word by . . . [p]raying to God. . . . God does not make mistakes and I am created in His image and defying what He has created is a sin and morally wrong. . . . I have not received a vaccine in at least twenty years. Through much prayer and listening to the guidance of the Holy Spirit, it would violate my sincerely held religious beliefs and jeopardize my soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image by receiving the vaccine. This is the way I choose to interpret God's Word; the messages I have received from God; and is my own personal translation of His teachings.

Ipsen made no decision regarding this letter, nor did Thornton comply with the vaccination requirement. As a result, Ipsen terminated Thornton's employment on November 10, 2021.

Six days later, Thornton filed a religious discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), which is empowered to enforce Title VII. 42 U.S.C. § 2000e-5. The EEOC dismissed the charge and issued Thornton a right-to-sue letter on August 30, 2022. Thornton then filed in Massachusetts Superior Court a complaint against Ipsen, which she twice amended. In her second amended complaint ("SAC"), Thornton alleges the following three counts: (1) religious discrimination in violation of Title VII and Chapter 151B;

(2) violation of her equal protection rights under the Fourteenth Amendment to the United States Constitution; and (3) violation of her substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution and the MDR.

On May 25, 2023, Ipsen removed the case to the United States District Court for the District of Massachusetts and, a week later, moved to dismiss Thornton's SAC under Federal Rule of Civil Procedure 12(b)(6). The parties then consented to having the case referred to the U.S. Magistrate Judge for all further proceedings, including entry of final judgment. See 28 U.S.C. § 636(c).

On October 26, 2023, the Magistrate Judge granted Ipsen's motion pursuant to Rule 12(b)(6) and dismissed the SAC in its entirety. The Magistrate Judge first determined that Thornton had failed to state a plausible claim of religious discrimination under Title VII or Chapter 151B. After considering Thornton's SAC, accommodation request form, and November 5 letter, the Magistrate Judge concluded that Thornton did not "state what [her] beliefs were or how they relate to vaccines generally or the COVID-19 vaccine specifically." The Magistrate Judge also noted that Thornton "d[id] not allege that her religion require[d] her to observe certain medical limitations that include a refusal to take vaccines generally or the COVID-19 vaccine." Thus, the

- 6 -

Magistrate Judge decided, Thornton's alleged belief that "what God has created is perfect" and that "it would violate [her] sincerely held religious beliefs and jeopardize [her] soul and eternal salvation to go against God by defiling [her] perfectly created body that He created in His image by receiving the vaccine" is not a religious belief but instead "merely a personal belief or isolated teaching."  (Internal quotation marks omitted).

The Magistrate Judge then turned to Thornton's federal constitutional claims and concluded that they were insufficient because the SAC had not plausibly alleged that Ipsen was a state actor.  Finally, the Magistrate Judge determined that Thornton's substantive and procedural due process claims under the MDR failed because the MDR does not provide a private right of action.

Thornton timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review de novo a dismissal pursuant to Rule 12(b)(6). Lowe v. Mills, 68 F.4th 706, 713 (1st Cir. 2023).  "[T]he propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2) . . . ."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 8 (1st Cir. 2011).

Rule 8(a)(2) sets a relatively low bar for plaintiffs seeking to bring claims in federal court.  But it is not a toothless pleading requirement.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-78

(2009) (describing Rule 8(a)(2)'s pleading standard). To comply with Rule 8 -- and survive a Rule 12(b)(6) motion -- a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,'" id. (quoting Twombly, 550 U.S. at 556); a complaint must plead facts sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570.

In making this plausibility determination, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández, 640 F.3d at 12). Then, we "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. (first citing Ocasio-Hernández, 640 F.3d at 12; and then citing S.E.C. v. Tambone, 597 F.3d 436, 441-42 (1st Cir. 2010) (en banc)). This "context-specific" approach requires us

"to draw on [our] judicial experience and common sense." Iqbal, 556 U.S. at 679.

In ruling on a motion to dismiss, we consider the facts alleged in the complaint and the exhibits attached to it. Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013) (citation omitted). We may also consider documents that, although not appended to the complaint, are sufficiently referenced therein. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the Magistrate Judge determined, and the parties agree, that Thornton's accommodation request form and November 5 letter are sufficiently referred to in the SAC. We concur and, in conducting our analysis, rely on the facts alleged in the SAC, accommodation request form, and November 5 letter. See Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 16 (1st Cir. 2024) ("[T]he district court . . . should have considered the documents expressly referenced in the complaint in which [the plaintiff] requested a religious accommodation. Thus, the information in these documents should have been included when evaluating the sufficiency of the complaint.").

**B. Title VII and Chapter 151B**

We begin with Thornton's religious discrimination claims. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his

- 9 -

compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."[1] 42 U.S.C. § 2000e-2(a)(1). Massachusetts law similarly prohibits "an employer [from] impos[ing] upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate . . . his creed or religion." Mass. Gen. Laws ch. 151B § 4(1A). Although Chapter 151B "has been interpreted largely to mirror Title VII," Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 131 (1st Cir. 2004) (citing Wheatley v. AT & T, 636 N.E.2d 265, 268 (Mass. 1994)); see also Lopez v. Commonwealth, 978 N.E.2d 67, 75 n.8 (Mass. 2012) ("Title VII . . . is the Federal analogue to [Chapter] 151B."), the Supreme Judicial Court of Massachusetts at times construes the Massachusetts statute more broadly to effectuate the legislature's directive to apply it liberally, Brown v. F.L. Roberts & Co., 896 N.E.2d 1279, 1285 (Mass. 2008) (citing Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 940 (Mass. 2001)). No matter the reach of Chapter 151B, "[n]either party has identified a material distinction between the federal

---

[1] Title VII defines "religion" to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

and state laws so for purposes of this appeal, we will consider the claims jointly."  Bazinet, 113 F.4th at 12 n.1.

With that background in mind, we turn to whether Thornton has stated a claim of religious discrimination.  To do so, we must discern whether the SAC asserted facts from which we can infer the following four elements: (1) that Thornton has beliefs that are religious and sincerely held, and (2) that her employer imposed upon her an employment requirement (3) that conflicted with those beliefs and (4) "was the reason for the adverse employment action." Lowe, 68 F.4th at 719.  In most cases, our inquiry will stop there; however, courts may grant a motion to dismiss based on a defendant's affirmative defense where "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019) (quoting Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009)); see also Lowe, 68 F.4th at 719 (applying the rationale from Zenon in the context of religious discrimination claims under Title VII).

There is little dispute that Thornton has alleged facts sufficient to establish elements two and four of her religious discrimination claims.  And Ipsen does not contend that any defense it has is clearly meritorious based on the allegations in the SAC. The crux of this dispute, rather, is whether Thornton adequately pleaded a bona fide religious belief that conflicted with the

- 11 -

vaccination requirement.  The Magistrate Judge found that Thornton did not.  We disagree.

The SAC and the exhibits attached thereto set forth various beliefs that, Thornton contends, are religious in nature and conflict with Ipsen's vaccination requirement.  She alleges that: her beliefs are "firmly established in [her] faith, the Holy Bible, and [her] conviction that what God has created is perfect"; "God requires [her] to follow His word and His Teachings so that [she] may live in Grace and have eternal salvation"; she is "created in [God's] image and defying what He has created is a sin and morally wrong"; her faith "requires [her] to keep [her] body and soul pure to God's standard as He created"; her beliefs "prohibit [her] from receiving the vaccine"; she "follow[s] God's word by . . . [p]raying"; and after praying "and listening to the guidance of the Holy Spirit, it would violate [her] sincerely held religious beliefs and jeopardize [her] soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image by receiving the vaccine."  These allegations, and the inferences that we must draw therefrom, plausibly support that some aspect of her accommodation request is based on her religious observance, practice, or belief.

This conclusion is buttressed by our recent decision in Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9 (1st Cir. 2024).  There, plaintiff Bazinet challenged the district court's

- 12 -

dismissal of her religious discrimination claims under both Title VII and Chapter 151B.  Id. at 12.  She had alleged that she was a "Christian who believes in Jesus Christ and His holy word, the Bible"; that the makers of the "COVID-19 vaccines currently available developed and confirmed their vaccines using fetal cell lines, which originated from aborted fetuses"; and that, based on those allegations, "[p]artaking in a vaccine made from aborted fetuses [would make her] complicit in an action that not only offends, but . . . [would be] an aberration to [her] Christian faith."  Id. at 13 (first, second, third, and fifth alterations in original).  Bazinet had also "identified a series of 'quotes from the Lord' which prevented her from taking the vaccine based on her belief that the vaccine was developed using aborted fetuses."  Id.

In light of Bazinet's factual allegations, we vacated the district court's order dismissing her religious discrimination claims.  Id. at 19.  We noted that Bazinet had "stated her understanding that presently available COVID-19 vaccines were developed using fetal cell lines that originated from aborted fetuses" and that taking the vaccine thus "would make her complicit in the performance of abortions which would be 'an aberration to [her] Christian faith.'"  Id. at 16 (alteration in original).  We then concluded that Bazinet had sufficiently "grounded her objection to taking the vaccine in a religious belief."  Id.

Thornton does so too.[2] She alleges that she holds certain religious beliefs that conflicted with the vaccination requirement -- namely, that the tenets of her religion prohibited her from defiling her perfectly created body, and that her prayers and guidance from the Holy Spirit informed her beliefs that receiving the COVID-19 vaccine would violate that tenet of her faith.[3] She further alleges that prayer is one of the ways in which she "follow[s] God's word" -- including the commandment to not defile one's body. Thus, she has plausibly alleged that her belief that the vaccine would defile her body is not an "isolated moral teaching," but rather is part of a "comprehensive system of beliefs about fundamental or ultimate matters" that the plaintiff articulated. Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa., 877 F.3d 487, 492 (3d Cir. 2017).

---

[2] Ipsen's brief develops no argument that Thornton's complaint lacks any allegations about how the vaccine's ingredients defile her body, and how (if at all) that should affect our analysis. So we say nothing on that score.

[3] We do not suggest that the COVID-19 vaccine is harmful. At the motion-to-dismiss stage, however, we must accept as true the plaintiff's nonconclusory factual allegations, even if they are improbable or, ultimately, "mistaken." Bazinet, 113 F.4th at 16; cf. Ocasio-Hernández, 640 F.3d at 12 ("Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" (citations omitted)).

- 14 -

Reaching the opposite conclusion would run counter to longstanding precedent set by this Court and the Supreme Court. We have previously described the task of "assessing the bona fides of an employee's religious beliefs" as "delicate." E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 57 (1st Cir. 2002). That is so because "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989) (citing Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 716 (1981)). Religious beliefs need not be "acceptable, logical, consistent, or comprehensible to others," Thomas, 450 U.S. at 714; see also United States v. Ballard, 322 U.S. 78, 86 (1944) ("Religious experiences which are as real as life to some may be incomprehensible to others."). Accordingly, the Supreme Court has long cautioned that "[c]ourts should not undertake to dissect religious beliefs . . . because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." Thomas, 450 U.S. at 715. And in the Title VII context, we have stressed that the "capacious definition" of religion "leaves little room for a party to challenge the religious nature of an employee's professed beliefs." Unión Independiente, 279 F.3d at 56.

Guided by kindred principles, several of our sister circuits have held that allegations -- much like Thornton's here -- were sufficient to plead a sincerely held religious belief at the motion-to-dismiss stage. For instance, in Sturgill v. American Red Cross, the Sixth Circuit ruled that the plaintiff adequately pleaded a bona fide religious belief by asserting that she was a Christian and a "steward[] of God's blessing of life," that she "was required to 'tak[e] the utmost care for [her] body," and that she was concerned that the ingredients in the vaccine could aggravate her blood clotting disorder. 114 F.4th 803, 806, 808 (6th Cir. 2024) (alterations in original). In so holding, the Sixth Circuit noted that "one plausible way to read her complaint is that by placing into her body a substance that she believes can cause injury, she would not honor God's command to the contrary." Id. at 810. Recent decisions in the Fourth, Seventh, and Eighth Circuits have pronounced that similar my-body-is-my-temple arguments rooted in a plaintiff's religious beliefs are sufficient to plead the existence of a bona fide religious belief. See Barnett v. Inova Health Care Servs., No. 24-1271, 2025 WL 37237, at *4 (4th Cir. Jan. 7, 2025) (holding that plaintiff's allegations that "receiving the vaccine would be sinning against her body, which is a temple of God" and that "it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it" were sufficient to survive

a motion to dismiss because they are "plausibly connected with her refusal to receive the COVID-19 vaccine"); Passarella v. Aspirus, Inc., 108 F.4th 1005, 1007-08 (7th Cir. 2024) (reversing grant of motion to dismiss where plaintiffs objected to the vaccination requirement because, among other things, their beliefs that their body is a temple of God and would be violated by the COVID-19 vaccine); Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894, 902 (8th Cir. 2024) (holding that plaintiff's belief that "her body is a temple" was sufficient to survive a motion to dismiss because she "connect[ed her] objection to [COVID-19] testing to specific religious principles").

We follow suit here. Thornton's factual allegations, accepted as true, indicate that her beliefs are "firmly established in [her] faith, the Holy Bible, and [her] conviction that what God has created is perfect"; she is "created in [God's] image and defying" that is wrong; her faith requires her to maintain a pure body and soul; she prays for guidance; and after praying, she interpreted "the guidance of the Holy Spirit" to be saying that her receiving the COVID-19 vaccine "would violate [her] sincerely held religious beliefs and jeopardize [her] soul . . . by defiling [her] perfectly created body that He created in His image by receiving the vaccine." At this nascent stage of the litigation, Thornton need allege no more facts -- nor more specific ones -- to show that she holds sincere religious beliefs that conflicted with

- 17 -

the vaccination requirement.  See Passarella, 108 F.4th at 1011 ("[C]ourts should not expect, much less require, exemption requests to sound like they were written by someone with legal training.").  Therefore, we reverse the Magistrate Judge's holding to the contrary.

### C. Federal Constitutional Claims

We next turn to Thornton's federal constitutional claims.  Thornton alleges that Ipsen violated her rights to equal protection, substantive due process, and procedural due process under the Fourteenth Amendment to the United States Constitution.  Ipsen, of course, is a private actor, against whom the Fourteenth Amendment "erects no shield."  Johnson v. Educ. Testing Serv., 754 F.2d 20, 23 (1st Cir. 1985) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)).  Still, Thornton contends that Ipsen is a proper defendant for these Fourteenth Amendment claims because it was coerced to act by the federal government.  See Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (explaining that "'in rare circumstances' . . . private parties can be viewed as [government] actors" (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992))).  The Fourteenth Amendment, however, does not apply to the federal government.  U.S. Const. amend XIV.  Thus, these claims fail for that reason alone.

## D. MDR Claim

Finally, we review Thornton's MDR claim. In her SAC, Thornton alleges that Ipsen violated her substantive and procedural due process rights under the MDR. Specifically, Thornton insists that she "has the right and protected interest under . . . Articles IV, X, XX, XXI, XXIX, and XXX of the [MDR] to be free from the invasion of bodily integrity and to be free from unwanted medical intervention." She then states that Ipsen violated these rights when it "mandated the COVID-19 vaccine upon [her], refused to honor her sincerely held religious beliefs and grant [her an exemption] from said vaccine and wrongfully terminat[ed her] from her employment in retaliation."

On appeal, Thornton develops no argument to contest the Magistrate Judge's holding that the MDR does not provide a private cause of action, and thus, she has waived any such challenge to it. See Brox v. Hole, 83 F.4th 87, 101 (1st Cir. 2023) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Instead, Thornton does insist that her MDR claim should be reimagined as a claim brought pursuant to the Massachusetts Civil Rights Act ("MCRA"), which provides a "mechanism for obtaining relief from the interference, or attempted interference, with rights conferred by Federal or Massachusetts law." Howcroft v. City of Peabody, 747 N.E.2d 729, 745 (Mass. App. Ct. 2001). She cannot do so. The SAC is devoid of any reference to the MCRA, so

too is Thornton's briefing on the motion to dismiss.  And "[i]t is elementary that a plaintiff cannot constructively amend [her] complaint with an allegation made for the first time in an appellate brief."  Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 20 (1st Cir. 2003) (first citing Royal Bus. Grp., Inc. v. Realist, Inc., 933 F.2d 1056, 1066 (1st Cir. 1991); and then citing Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 22 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 66-67 (1st Cir. 2004)).  Thornton has consequently waived any claim under the MCRA.  Id. (citing McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991)); see also Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008) ("Appellants cannot raise an argument on appeal that was not 'squarely and timely raised in the trial court.'" (quoting Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006))).

Therefore, we affirm the Magistrate Judge's dismissal of Thornton's MDR claim and decline to address the merits of Thornton's new MCRA claim.

### III. CONCLUSION

For the foregoing reasons, we **reverse** the judgment of the Magistrate Judge as to the religious discrimination claims under Title VII and Chapter 151B, and we **affirm** the judgment as to the other claims.  The parties shall bear their own costs.