In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 23-1660 and 23-1661

MEGAN PASSARELLA and SANDRA DOTTENWHY,

*Plaintiffs-Appellants*,

*v.*

ASPIRUS, INC.,

*Defendant-Appellee*.

———————————

Appeals from the United States District Court for the
Western District of Wisconsin.
Nos. 3:22-cv-00287-jdp & 3:22-cv-00342-jdp
**James D. Peterson**, *Chief Judge*.

———————————

ARGUED DECEMBER 4, 2023 — DECIDED JULY 29, 2024

———————————

Before ROVNER, SCUDDER, and PRYOR, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Title VII of the Civil Rights Act of
1964 prohibits employers from failing to accommodate an employee's religious beliefs. Megan Passarella and Sandra Dottenwhy worked for Aspirus Health at a hospital in Wisconsin
and sought such an accommodation in the form of an exemption from the company's COVID-19 vaccination requirement.
When Aspirus determined that their objections were more

rooted in safety concerns than religious conviction, Passarella and Dottenwhy lost their jobs. They sued under Title VII, with the district court then agreeing with Aspirus and dismissing the claims on the pleadings. We reverse and, aligned with the only two circuits to have considered the question, hold that an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice.

## I

### A

Both plaintiffs worked in a healthcare capacity at Aspirus, a non-profit hospital system based in Wausau, Wisconsin—Megan Passarella as a nurse in a medical surgery unit and Sandra Dottenwhy as a pharmacy technician. In November 2021 Aspirus announced a requirement that all employees receive COVID vaccination. The mandate brought with it permission to seek a religious exemption.

Passarella does not tell us what she wrote in her initial religious exemption request (and neither party entered it into the record). But she did attach to her complaint the five-page letter (effectively an appeal or request for reconsideration) she submitted after Aspirus denied her initial request. Invoking and quoting passages from the Bible, Passarella explained her Christian belief that her body "is [the Lord's] dwelling place" and that "[a]fter prayerful consideration, I don't feel at peace about receiving the COVID vaccine" and instead "must trust God with my body (His temple) and that he will provide for me and protect me as he has already proven time and time again during my life." She likewise stated that "God knows my body better than anyone because He is the maker of it."

Passarella "obey[s] scripture and the divine wisdom and discernment imparted to me by the Holy Spirit through prayer." Her "conscience," too, "act[s] as a guide to the rightness or wrongness of one's behavior" and here "I must follow the message that God has given me not to receive the vaccine."

From a safety standpoint, Passarella added that she believes that "the vaccines could pose a danger to my body in the form of blood clots or heart inflammation." This concern, combined with her religious beliefs, leads to her conviction that God in the "current scenario" does not want her to receive the vaccine. She saw her position as consistent with her broader life pattern of "primarily consum[ing] organic foods and exercis[ing] to maintain my health" while also "avoid[ing] prescription and OTC medication, alcohol, and other consumables that may be toxic to my body."

For her part, Dottenwhy explained her exemption request in more abbreviated terms:

> I am asserting my rights as a Christian to be exempt from taking this vaccine. I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being. I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision.

After Aspirus declined her request, Dottenwhy appealed and added the following:

> So if it's my body my choice when it comes to abortion, WHICH I AM TOTALLY AGAINST. Why isn't it my body my choice when it comes to a vaccine, WHICH I AM TOTALLY AGAINST. In my opinion this vaccine was developed too quickly. Not enough time for deep study. I have prayed long and hard about this and I am fearful of the effects. The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God. I have read through Title VII of the Civil Rights Act of 1964, and I pray you would not go against my rights as a Christian and employee that has served your organization and the community for 18 years.

Aspirus denied Passarella's and Dottenwhy's exemption requests and terminated their employment in December 2021. Both reacted by filing, as relevant here, claims under Title VII in separate cases in the Western District of Wisconsin. Aspirus then moved under Fed. R. Civ. P. 12(b)(6) to dismiss both complaints for failure to state a claim.

B

Without formally consolidating the cases, the district court issued a single order granting Aspirus's motions to dismiss. The district court determined that Passarella's and Dottenwhy's Title VII claims fell short at the threshold because their exemption requests did not advance a religious objection to Aspirus's vaccination requirement. In the district court's view, neither Passarella nor Dottenwhy "articulate[d] any religious belief that would prevent [them] from taking the vaccine if [they] believed it was safe." Instead, the "[plaintiffs]

object to the vaccine mandate as a matter of medical judgment rather than religious conviction." The district court further observed that "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion."

Passarella and Dottenwhy appeal the district court's ruling.

## II

### A

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Congress amended the statute in 1972 to clarify that "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). We have described this definition as "blend[ing]" a "broad substantive definition of religion with an implied duty to accommodate employees' religions and an explicit affirmative defense for failure-to-accommodate claims." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013).

An employee claiming that her employer failed to accommodate her religion must as a threshold matter show that (1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee

called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment. See *Adeyeye*, 721 F.3d at 449. At that point the employer can invoke the affirmative defense that accommodation would result in "undue hardship" or a "substantial" burden in the "overall context" of the business. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

B

The language Congress employed in Title VII goes a long way to supplying a standard to answer the question presented. At the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts plausibly permitting an inference that some "aspect[]" of the request is based on the employee's "religious observance and practice" or "belief." 42 U.S.C. § 2000e(j).

Applying the statutory language necessarily requires an exercise of judgment: the standard is not amenable to formulaic resolution like solving a math equation. To the contrary, its application requires a holistic assessment of the terms of the employee's exemption request, with the controlling inquiry at the pleading stage being whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice.

Notice a point inherent in our articulation of this standard. An employee may object to an employer's vaccine mandate on both religious and non-religious grounds—for example, on the view that receiving the vaccine would violate a religious belief *and* implicate health and safety concerns.

Congress permitted this, as we see no other way to give effect to the breadth of its definition of "religion"—as covering "all aspects" of an employee's religious observance, practice, and belief. *Id.* And, for its part, the Equal Employment Opportunity Commission, in implementing this same definition, has likewise emphasized that a religious objection to a workplace requirement may incorporate both religious and secular reasons. See U.S. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (2023).

Passarella's and Dottenwhy's exemption requests satisfy this standard. Passarella's statement connects her objection to vaccination with her Christian beliefs regarding the sanctity of the human body. Although less robust in her articulation, Dottenwhy makes the same connection, as she expressly stated her Christian belief that the body is a "temple of the Holy Spirit" in tandem with concerns about the potentially harmful effects of the vaccine. In short, both exemption requests are based on their face and at least in part on a dimension of the plaintiffs' religious beliefs. This makes them—at least at the pleading stage—religious in nature within the meaning of Title VII.

## C

The district court charted a different course, seeing Passarella's and Dottenwhy's requests as 100% secular. But the fact that an accommodation request also invokes or, as here, even turns upon secular considerations does not negate its religious nature. To conclude otherwise fails to give effect to Congress's expansive definition of "religion" and, even more, denies that a matter of personal conviction can root itself in both religious and non-religious reasons.

Recognize the path a contrary approach would take courts down. We would inevitably face the task of trying to draw lines between requests that are, for example, "primarily" or "mostly" or "minimally" or "tangentially"—pick your adverb—based on religion, with the latter categories ostensibly falling short of the Title VII threshold. Those kinds of distinctions would prove slippery in practice and arbitrary in their application.

Legal peril also looms. This alternative approach would take us into territory the Supreme Court has admonished courts in no uncertain terms not to enter when discerning whether an individual harbors a religious belief or engages in religious practice. To be sure, the Court's decisions have not interpreted Title VII but, by close analogy, have considered what constitutes religious practice, observance, and belief under the Free Exercise Clause of the First Amendment and different federal statutes, including the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA). At every turn the Court's watchword has been caution.

Consider, for instance, the Court's admonition in *Thomas v. Review Board of the Indiana Employment Security Division* that judges are not to "undertake to dissect religious beliefs … because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." 450 U.S. 707, 715 (1981). *Thomas* examined what counts as a "religious belief or practice" under the Free Exercise Clause, but the Court's fundamental observation applies equally here: "[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more

correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation." *Id.* at 716.

Similar cautionary language resounds across many other cases. See, *e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) (emphasizing that "federal courts have no business addressing [] whether the religious belief asserted in a [Religious Freedom Restoration Act] case is reasonable"); *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989) (warning that the orthodoxy of a claimant's belief is "irrelevant" under the Free Exercise Clause); *United States v. Ballard*, 322 U.S. 78, 86 (1944) (observing that "[r]eligious experiences which are as real as life to some may be incomprehensible to others").

A more precise takeaway from this body of precedent is that a "religious" objection can sound in *both* religious and non-religious terms. The law in many contexts—whether it be the Free Exercise Clause or a federal statute like RFRA or RLUIPA—does not require one or the other. See, *e.g.*, *Welsh v. United States*, 398 U.S. 333, 342 (1970) *(*recognizing that an objection to the statutory military conscription requirement need only be "based in part" upon religion to be considered "religious"); *id.* (observing that a religious objection may be based "to a substantial extent" upon other considerations, such as social, economic, philosophical, or public policy concerns); *United States v. Seeger*, 380 U.S. 163, 186 (1965) (excluding draft exemptions based on a "merely personal moral code"—one that is "not only personal but which is the *sole* basis for the registrant's belief and is in *no way* related to a Supreme Being" (emphasis added)).

We too have adhered to this same cautionary approach, including in interpreting Title VII. See *Redmond v. GAF Corp.*, 574 F.2d 897, 900–01 (7th Cir. 1978) (explaining that Title VII

protects "conduct which is 'religiously motivated,' i.e., all forms and aspects of religion, however eccentric" and rejecting the contention that a practice must be "per se" prohibited by religion to warrant Title VII protection); *Adeyeye*, 721 F.3d at 452 (highlighting Title VII's "broad and intentionally hands-off definition of religion").

Perhaps above all else, then, one guidepost is clear: "[c]ourts should not undertake to dissect religious beliefs … because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas*, 450 U.S. at 715. Nor should courts require employees to choose between the binary alternatives of a religious reason and non-religious reason to explain their perspective—here, their reason for seeking an exemption from mandatory COVID vaccination.

Remember, too, what is being reviewed—not statutory language debated and refined by lawmakers or letters drafted by counsel, but instead an employee's explanation (whether typed or handwritten on a pre-printed form) for why they seek an exemption from COVID vaccination. Yes, the explanation must satisfy the standard we have articulated. But, no, courts should not expect, much less require, exemption requests to sound like they were written by someone with legal training. If an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss.

No doubt there are limits. Religious accommodation requests rooting themselves entirely in safety considerations with no plain and express connection to religion will fall outside of the statute even at the pleading stage. And so, too, will

downright "bizarre" reasons having no plausible connection to religion. See *Thomas*, 450 U.S. at 716 (emphasizing the same point).

## D

Our conclusion aligns with those of the only two other circuit courts to have considered the issue presented—both on similar facts.

In *Ringhofer v. Mayo Clinic, Ambulance*, the Eighth Circuit considered religious exemption requests advanced by two plaintiffs who objected to their employer's vaccine mandate. See 102 F.4th 894 (8th Cir. 2024). One employee explained that because "her body is a temple for the Holy Spirit that she is duty bound to honor," "[s]he does not believe in putting unnecessary vaccines or medications into her body" and the other that "[s]hifting my faith from my Creator to medicine is the equivalent of committing idolatry" and violating her faith. *Id.* at 902. The Eighth Circuit reversed the district court's dismissal of these plaintiffs' Title VII claims, concluding that "[b]y connecting their objection to testing to specific religious principles," the plaintiffs satisfied their burden at the pleading stage. *Id.* "[Religious] beliefs," the court emphasized, "do not have to be uniform across all members of a religion or 'acceptable, logical, consistent, or comprehensible to others.'" *Id.* (quoting *Thomas*, 450 U.S. at 714).

The Sixth Circuit charted the same course in *Lucky v. Landmark Medical of Michigan*, construing similar factual allegations and concluding that the plaintiff, "as a result of her beliefs" and personal prayer, refused vaccination. 103 F.4th 1241, 1243 (6th Cir. 2024). The court emphasized that Title VII's language did not, contrary to the district court's

conclusion, require the plaintiff to explain in more depth how any particular tenet or principle of her religion prohibited vaccination. See *id.* To the contrary, Title VII, when read against the federal pleading requirements, required only that the plaintiff allege "facts supporting an inference that her refusal to be vaccinated for COVID was an 'aspect' of her 'religious observance' or 'practice' or 'belief.'" *Id.* (quoting 42 U.S.C. § 2000e(j)).

E

Be careful not to overread today's decision. All we have decided is that Megan Passarella and Sandra Dottenwhy alleged enough in their complaints to support plausible inferences that they sought exemptions from Aspirus's vaccine mandate based on some "aspect[]" of their religious "belief" or "observance." But what constitutes a "religious" claim is not the beginning and end of the Title VII inquiry.

These cases will now proceed to discovery, where Aspirus, like any employer, will be permitted to develop evidence that the beliefs in question are not "sincere" or even "religious." See *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013) (describing religiosity and sincerity as "factual inquiries within the court's authority and competence"); see also *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) (emphasizing that "sincerity rather than orthodoxy" is the touchstone of the accommodation analysis under the federal Religious Land Use and Institutionalized Persons Act).

In addition to challenging the plaintiffs' sincerity, Aspirus will have the right to make an evidentiary showing that it is "unable to reasonably accommodate [the employee's] religious observance or practice without undue hardship on the

conduct of [its] business." 42 U.S.C. § 2000e(j). And we fully expect Aspirus to explain that, at least in hospital and other medical care environments, it has determined that mandatory vaccination is the best way to protect patients, caregivers, and its broader staff from a disease that has taken approximately 1.2 million lives within the United States. And, of course, Passarella and Dottenwhy will have an opportunity to offer their own perspective on what constitutes a reasonable accommodation of their religious beliefs.

With these closing observations, we REVERSE and REMAND for further proceedings.

ROVNER, *Circuit Judge,* dissenting. Even applying the generous standard the court has adopted as to Title VII claims for a religious accommodation, I am not convinced that either Passarella (a nurse) or Dottenwhy (a pharmacy technician) placed Aspirus on fair notice that their accommodation requests were religious rather than secular in nature. I note that a significant number of our colleagues on the district court have dismissed comparable claims, as Judge Peterson did here. *See Flores v. Cook Cnty.*, No. 23 CV 16260, 2024 WL 3398360, at *2 (N.D. Ill. July 11, 2024) (Daniel, J.) (collecting cases). I would follow their lead.

Allow me to say at the start that I am relying as much upon what the two plaintiffs in this case *did* say about their reasons for opposing the COVID-19 vaccine as what they did *not* say. Neither Dottenwhy nor Passarella is a lawyer, and I agree that there were no magic words either of them had to say to their employer in order to make a legitimate request for religious accommodation under Title VII. But apart from broad references to G-d and their religion in their respective requests, both plaintiffs failed to link their objections to the COVID-19 vaccine to any particular religious belief or practice. As importantly, they both articulated their objections to the COVID-19 vaccine in such a way as to make clear to Aspirus that their objections were secular rather than religious in nature. In effect, they wrote themselves out of Title VII's religious protections. Aspirus, consequently, was not required to consider whether an accommodation was possible, and the district court properly dismissed their complaints. I begin my analysis with Dottenwhy's accommodation request.

**I.**

In order to qualify for a religious accommodation, "the belief necessitating the accommodation must actually be religious." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013). Dottenwhy's initial request and her subsequent appeal both make clear that she did not want to take the vaccine based on her assessment of its safety and efficacy, as opposed to a conflict with her religious principles. Although her initial request began with an invocation of her "rights as a Christian," the objection that Dottenwhy expressed as to the COVID-19 vaccine was entirely secular: "I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine in my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being." Dottenwhy R. 8-1. Similarly, Dottenwhy's appeal, after again invoking a right to bodily autonomy ("[I]f it's my body my choice when it comes to abortion, … [w]hy isn't it my body my choice when it comes to a vaccine[?]"), expressed a non-religious reason for opposing this particular vaccine: "In my opinion this vaccine was developed too quickly. Not enough time for deep study. … I am fearful of the effects." Dottenwhy R. 8-2. Dottenwhy's thinking was no different from that of any number of Americans who, like her, believed the COVID-19 vaccine was developed in a hurry and was not sufficiently proven safe, and/or who opposed vaccine mandates, but who did not rely on their religion as a ground for requesting an exemption. More to the point, the basis for Dottenwhy's objection to the vaccine would have looked no different if she practiced no religion and had no religious beliefs. *See Fallon v. Mercy Catholic Med. Ctr. of S.E. Penn.*, 877 F.3d 487, 492 (3d Cir. 2017) (plaintiff's rejection of scientific

consensus that flu vaccine is harmless to most people and his belief that the vaccine may do more harm than good "is a medical belief, not a religious one"); *Brown v. Cook Cnty. Auditor's Office*, No. 23-cv-10452, 2024 WL 3426888, at *5 (N.D. Ill. July 16, 2024) (Coleman, J.) ("Throughout his Request, Brown clearly demonstrates that his primary concern about the [vaccination] Policy is the potential harms of the vaccine and his lack of personal autonomy under the mandate, rather than the religious principles to which he briefly refers."); U.S. E.E.O.C., *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* § L.2 (last updated May 15, 2023) ("Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII."), available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

I recognize that Dottenwhy, in the statements she submitted to Aspirus, invoked her rights as a Christian, said she had prayed about the matter and sought guidance from G-d, and expressed her conviction that "HE is with me on this decision." Dottenwhy R. 8-1. Without more, such statements are not enough, in my view, to transform an otherwise secular objection to the vaccine into a religiously-based one. As much as I genuinely appreciate the importance of prayer in people's lives and their belief that G-d is on their side, I am not convinced that Congress meant to compel an employer to grant any requested accommodation that an employee has prayed about and has concluded that his or her G-d supports. If that

were so, there would be almost no limit to the accommodations that an employer would have to entertain under Title VII's ban on religious discrimination. *See Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), *appeal dismissed*, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023). The employee must be able to identify a particular religious belief or practice that demands the accommodation. *Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at *3 (N.D. Ill. Apr. 10, 2024) (Kennelly, J.).

The closest that Dottenwhy's requests came in this regard was to say that, according to the Bible, her body is "a temple of the Holy Spirit." Dottenwhy R. 8-2. But Dottenwhy stopped there, without any elaboration as to why becoming vaccinated against COVID-19 would be inconsistent with treating her body as G-d's temple. What Dottenwhy articulated, then, was not a religious belief that proscribes vaccinations or any particular type of medication or medical treatment, but rather a high-level, religiously-inspired goal: treat one's body well. But the implementation of that goal with respect to a compulsory vaccine, as she described it, was secular: evaluate the provenance of a vaccine and avoid it if it is untested and unproven. Her claim is akin to that of an employee who seeks a religious exemption from a requirement that he work late on Thursday evenings, on the ground that his religion calls on him to be a good father, and Thursday night is the night he and his family have chosen as "family night," because that is the night that best suits the competing demands of work, school and after-school events, and community and social obligations. The goal is religiously-motivated—honor one's G-d and one's faith by being a good parent—but the rationale for not wanting to work on Thursday evening is not: he is not religiously forbidden from working

late on Thursdays or any other night; it is simply that he and his family have picked Thursday night over others for practical, secular reasons that are unique to them. In my view, an employer is no more obligated by Title VII to treat that exemption request as one necessitated by a religious belief than Aspirus was required to treat Dottenwhy's objection to the COVID-19 vaccine as an objection grounded in her religious beliefs. *See Nelson-Godfrey v. Cook Cnty.*, No. 23 C 16893, — F. Supp. 3d —, 2024 WL 2722668, at *2 (N.D. Ill. May 28, 2024) (Bucklo, J.) (rejecting as insufficient to state a religious claim plaintiff's invocation of "vaguely religious themes like describing her body as a 'temple of G[-]d' that she must protect against 'unclean' substances").

## II.

Passarella's statement came somewhat closer to describing a religious basis for a vaccine exemption, but in the end, I believe that Aspirus correctly understood her objection to the COVID-19 vaccine to be secular rather than religious.

In contrast to Dottenwhy, Passarella said a good deal more about why her religion deems her body to be a temple of G-d and how that belief influences her life choices. She noted that her body "is His dwelling place" (Passarella R. 1-1 at 4), that it "belongs to the Lord" (*id.*), and she "must use [her] body to glorify G[-]d" (*id.* at 1). She explained that she has a corresponding duty not to defile her body, to preserve her health rather than endanger it, and "to be watchful and careful regarding what I do with my body, how I use my body, and even what I allow into my body." *Id.* at 4. Accordingly, she "primarily consume[s] organic foods and exercise[s] to maintain [her] health. [She is] an avid essential oil user, avoid[s]

prescription and OTC [over-the-counter] medication, alcohol, and other consumables that may be toxic to [her] body. …" *Id.*

Passarella also articulated a belief that it is G-d, rather than modern medicine, who is primarily responsible for her health and well-being. She said that "G-d knows [her] body better than anyone because He is the maker of it," that "[her] ultimate protection, care, and healing comes from the Lord." *Id.* at 1. She acknowledged that G-d "can choose to use modern means, methods, and medicines to give [her] protection, and at times, to bring [her] healing when [she] need[s] it." *Id.* at 2. She emphasized, however, that "as a multi-faceted human being who possesses a spirt and soul, I recognize that my G[-]d is the ultimate healer and sustainer of my life." *Id.*

As it turns out, however, Passarella does not have a religious objection to all vaccines, and the explanation she gave Aspirus for requesting an exemption from the COVID-19 vaccine in particular makes clear that her objection to the vaccine, like Dottenwhy's, is based on her individual perceptions of the vaccine's safety. On the matter of vaccines generally, Passarella stated:

> Although[ ] I have received other vaccines, in which my 'sincerely held belief' might be brought into question, to which I would respond, I have made shrewd decisions regarding the vaccines I put into my body. One example of this is the Gardasil vaccine [for the human papillomavirus]. I have not received this vaccine, as there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine.    Although    it    comes    highly

> recommended by physicians, it goes against my
> conscience to receive it … .

*Id.* at 3. Passarella's discussion of her decision to reject the Gardasil vaccine indicates that her "shrewd" decision-making as to vaccines turns on her secular, medical assessments of each vaccine, rather than any particular religious principle. Her discussion of the COVID-19 vaccine confirms as much. "There is … evidence available and worthy of consideration that the vaccine[ ] could pose a danger to my body in the form of blood clots or heart inflammation." *Id.* at 4. Passarella cited no religious tenet or practice that would allow her to take other vaccines, but not this particular vaccine. She thus gave her employer no reason to believe that her religious beliefs precluded her from complying with the mandate that she be vaccinated against COVID-19.

There is one more substantive piece to Passarella's argument that her objection to the vaccine is a religious objection: that it reflects the exercise of her G-d-given conscience. In her statement, Passarella emphasized that her conscience "comes from G[-]d" (*id.* at 1), that "the Holy Spirit dwells within [her]" (*id.*), and that she is "obligated to operate under [her] conscience, which is a G[-]d given message" (*id.* at 3). Thus: "[W]hile the 'science' states that we should receive the vaccine for various reasons, we need to lean on G[-]d's understanding that has been given to us through our conscience. Accepting any of the available covid vaccines into my body would place my trust in Man over my faith in G[-]d, which defiles his temple." *Id.* at 4.

It cannot be enough to state a claim for a religious accommodation to assert that because one's conscience is G-d given, any decision one reaches in their good conscience is

necessarily inspired and endorsed by G-d, and therefore is religious in nature. This is comparable to the rationale I discussed above, that because an employee has prayed about a matter and believes G-d is with him or her, the employee's decision is necessarily a religious one. Again, if this were sufficient to state a prima facie claim for a religious exemption, there would literally be no end to the types of otherwise-secular decisions that an employee could characterize as religious and request an employer to accommodate. *See Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003) ("[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief. Otherwise he could announce without warning that white walls or venetian blinds offended his 'spirituality,' and the employer would have to scramble to see whether it is feasible to accommodate him by repainting the walls or substituting curtains for venetian blinds.") (citations omitted). This is far beyond anything that Congress could have intended when it enacted Title VII. Passarella's assertion that her G-d given conscience led her to conclude that she should not be immunized for COVID-19 vaccine was not sufficient to put Aspirus on notice that her objection to the vaccine was grounded in religion, such that it was required to consider whether an accommodation was reasonable.

## III.

Any employer—and especially a healthcare employer like Aspirus, which operates hospitals and medical clinics—must be able to make reasoned and timely assessments of whether the basis for an objection to an important, health- and life-saving work requirement is religious or not. Given the broad judicial definition of religious beliefs and practices, an

employer is confronted with as many sets of religious beliefs as it has employees—and as this case demonstrates, exemption requests that may vary from one compulsory vaccine to the next. In order to bring her request within the scope of Title VII, an employee must draw a discernible link between a particular religious belief or practice and the workplace obligation from which she wishes to be excused. I appreciate the court's emphasis on the possibility that Aspirus may ultimately be able to show that it would have been unduly burdensome, in a healthcare context, to exempt employees like Dottenwhy and Passarella from the vaccine requirement. But I am not convinced that Dottenwhy's and Passarell's essentially secular objections to the COVID-19 vaccine should suffice to open the door to federal court and force their former employer to spend significant time and expense in defending the case through summary judgment and, potentially, through trial.

I respectfully dissent.