APPEALS COURT 
 
 RACHELLE JEUNE vs. UMASS MEMORIAL HEALTH CARE SYSTEM.[1]

 
 Docket:
 24-P-1047
 
 
 Dates:
 May 23, 2025 – September 29, 2025
 
 
 Present:
 Ditkoff, Singh, & Smyth, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Anti-Discrimination Law, Religious beliefs, Employee, Employment, Termination of employment. Employment, Discrimination. Religion. Hospital. Public Health, Immunization. Practice, Civil, Summary judgment.
 
 

             Civil action commenced in the Superior Court Department on March 23, 2023.
            The case was heard by Daniel M. Wrenn, J., on a motion for summary judgment.
            Scott A. Lathrop for the plaintiff.
            Robert L. Kilroy (Massiel L. Sanchez also present) for the defendant.
            DITKOFF, J.  The plaintiff employee, Rachelle Jeune, appeals from a grant of summary judgment dismissing her complaint against UMass Memorial Health Care (UMass Memorial) alleging religious discrimination in violation of G. L. c. 151B, § 4 (1), (1A).  Specifically, UMass Memorial denied the plaintiff a religious exemption from its COVID-19 vaccination policy on the ground that her beliefs "[r]eli[ed] on demonstrably false information."  In Massachusetts, an employer must accommodate an employee's genuine religious beliefs if it can do so without creating an undue hardship.  We conclude that the plaintiff's stated beliefs that her body is a temple of God and that she prayed to God and received a message not to receive the COVID-19 vaccination were beliefs that a trier of fact could determine were religious in nature.  We further conclude that, on this summary judgment record, UMass Memorial - which has a policy of providing a religious exemption to its vaccination requirement -- failed to demonstrate an undue burden as a matter of law.  Finally, concluding that there is a genuine issue of material fact whether the plaintiff is an employee of UMass Memorial (which UMass Memorial denies), we reverse the grant of summary judgment to UMass Memorial.
            1.  Background.  As UMass Memorial's affiant states, "[t]he UMass Memorial Health Care system is a broad-based healthcare system comprising a number of affiliated hospitals and healthcare facilities throughout Massachusetts."  It includes UMass Memorial HealthAlliance-Clinton Hospital, Inc. (hospital), a wholly owned subsidiary of UMass Memorial.
            On July 26, 2021, the plaintiff started employment at the hospital as a "Certified Surgical Tech Operating Room."  On September 15, 2021, UMass Memorial announced a systemwide COVID-19 vaccination policy.[2]  Under the policy, all employees were required to obtain a first dose of vaccine by November 1, 2021, and to be fully vaccinated by December 15, 2021.[3]  The policy provided both medical and religious exemptions.  All exemption requests would be reviewed by system-level committees.  Employees granted an exemption by a system-level committee would "meet confidentially with Human Resources and their manager to determine whether their exemption can be accommodated . . . . on a case-by-case basis."
            Those employees granted accommodations would be required to "(i) wear[] an approved N95 respirator as well as full eye protection in any UMMH building at all times; (ii) eat[] all meals in a socially distanced manner; and (iii) undergo[] frequent COVID-19 testing."  Those denied accommodations would be permitted to take other jobs for their UMass Memorial entity, if available.  If not, they would be fired.
            On October 6, 2021, the plaintiff submitted a request for a religious exemption.  In relevant part, the plaintiff stated the following:[4]
"Covid-19 vaccination oppose my personal religious that I hold sacred.  It would prevent me from worshipping my God and it also prevent me from practicing my First Amendment Freedom of Religion.
"Covid-19 vaccines are not the same as 'traditional vaccines'.  The possibility of Covid-19 genetically altering my body,[5] the body God create in his image, is against my belief. (Genesis 1:27[6])
"The body is the temple of God; those genetic coding proteins are not natural to human genetic system.  1 Corinthians 6: 19-20[7]
"I never did nor I will turn my back on modern medicines and its practices.  However, I have always consult with my Bible first, pray to my God for guidance and rely on his healing power.  My final decision will adhere to what he guides me to do.  Proceeding with Covid-19 would be a sin against my conscience.
"This letter is my sincere explanation of my personal beliefs.  I hope that I have described them sufficiently.  I have been diligently praying about the covid-19 vaccine and this letter is my distinctive message from my God."
            On October 27, 2021, the UMass Memorial religious exemption committee denied the plaintiff a religious exemption.  Their entire explanation was the following:
"This requester asserts they cannot receive the COVID-19 vaccines based on their Christian faith because they will 'genetically alter' their body.  This is patently false -- none of the COVID-19 vaccines genetically alter the body or change a person's DNA.  Reliance on demonstrably false information cannot be a basis for a religious accommodation."
            On December 2, 2021, the vice-president of labor and employee relations of UMass Memorial informed the plaintiff by letter that she "will be separated from employment with UMass Memorial Health effective today" for failing to be vaccinated.
            In response, the plaintiff filed a lawsuit against UMass Memorial for religious discrimination.  A judge granted summary judgment for UMass Memorial on the grounds that (1) the plaintiff was not employed by UMass Memorial; (2) the plaintiff "failed to articulate a sincerely held religious belief that precluded her from getting vaccinated"; and (3) the plaintiff could not be provided with an accommodation without an undue hardship.  This appeal followed.        2.  Standard of review.  "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.'"  Cottrell v. Laidley, 103 Mass. App. Ct. 483, 489 (2023), quoting Chambers v. RDI Logistics, Inc., 476 Mass. 95, 99 (2016).  "In deciding a motion for summary judgment the court may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits."  Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 506 (2019), quoting Niles v. Huntington Controls, Inc., 92 Mass. App. Ct. 15, 18 (2017).
            "It shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate . . . his creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such individual."  G. L. c. 151B, § 4 (1A).[8]  "Initially, the employee bears the burden of proving that the employer required him to violate a religious practice compelled by his sincerely held belief."  Massachusetts Bay Transp. Auth. v. Massachusetts Comm'n Against Discrimination, 450 Mass. 327, 335-336 (2008).  "[T]he burden then shifts to the employer 'to prove that accommodation of the [employee's] religious obligations would impose . . . an undue hardship' pursuant to the statute."[9]  Brown v. F.L. Roberts & Co., 452 Mass. 674, 676 (2008), quoting New York & Mass. Motor Serv., Inc. v. Massachusetts Comm'n Against Discrimination, 401 Mass. 566, 576 (1988).
            3.  Religious belief.  UMass Memorial accepts that the sincerity of the plaintiff's expressed religious beliefs cannot be contested on summary judgment, although it remains free to challenge their sincerity at trial.  Rather, UMass Memorial contends that the plaintiff's beliefs are secular, not religious.
            Here, the plaintiff expressed the belief that her "body is the temple of God" and that the vaccines contain "proteins [that] are not natural to human genetic system."  She stated that she consulted the Bible and prayed to God and that her refusal was a "distinctive message from my God."  In her deposition, she testified that, "Before I put anything into my body, I have to connect it with my -- with my god and then review the information to see if it's something that really cooperate to my belief before I take it."  She stated that she is "one with the creator" and "putting anything into my body, example like COVID vaccine, can prevent me from connecting to god."  Her process was to "pray for connection.  I ask for guidance, . . . when I go to my altar, I present the ingredient, I present the paper, and see if I can connect with it, what is it it's going to do alter to my body."  She reported that she had followed that process each time before taking the hepatitis B vaccine.[10]
            Case law from the Federal appellate courts establishes that the reasons given in this plaintiff's request could be considered religious by a trier of fact.[11]  In Thornton v. Ipsen Biopharms., Inc., 126 F.4th 76, 82 (1st Cir. 2025), the plaintiff stated that she believed she was "created in [God's] image and defying what He has created is a sin and morally wrong" and that "she 'follow[s] God's word by . . . [p]raying'; and after praying 'and listening to the guidance of the Holy Spirit, it would violate [her] sincerely held religious beliefs and jeopardize [her] soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image by receiving the vaccine.'"  The United States Court of Appeals for the First Circuit held that "[t]hese allegations, and the inferences that we must draw therefrom, plausibly support that some aspect of her accommodation request is based on her religious observance, practice, or belief."  Id.  The court also held that, where the plaintiff "alleges that prayer is one of the ways in which she 'follow[s] God's word' -- including the commandment to not defile one's body[,] . . . she has plausibly alleged that her belief that the vaccine would defile her body is not an 'isolated moral teaching,' but rather is part of a 'comprehensive system of beliefs about fundamental or ultimate matters' that the plaintiff articulated."  Id. at 83, quoting Fallon v. Mercy Catholic Med. Ctr. of S.E. Pa., 877 F.3d 487, 492 (3d Cir. 2017).
            Other circuit cases are in accord.  In Barnett v. Inova Health Care Servs., 125 F.4th 465, 471 (4th Cir. 2025), the plaintiff alleged that "(1) 'it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it'; (2) her 'religious reasons for declining the covid vaccinations . . . were based on her "study and understanding of the Bible and personally directed by the true and living God"'; and (3) receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself."  The court held that these allegations, if substantiated, "are sufficient to show that [the plaintiff's] 'belief is an essential part of a religious faith' that 'must be given great weight[,]' and are plausibly connected with her refusal to receive the COVID-19 vaccine."  Id., quoting Patrick v. LeFevre, 745 F.2d 153, 157-158 (2d Cir. 1984).
            In Sturgill v. American Red Cross, 114 F.4th 803, 808 (6th Cir. 2024), the plaintiff stated that "she makes 'daily decisions . . . through prayer and by reading scripture'" and, "My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body."  The court summarized this as that the plaintiff "alleges that she prayed about whether to take the COVID-19 vaccine and concluded that not taking it would 'honor God and the temple he gave [her].'"  Id.  The court held that "these 'allegations were almost self-evidently enough to establish, at the pleadings stage, that her refusal to receive the vaccine was an "aspect" of her religious observance or belief.'"  Id., quoting Lucky v. Landmark Med. of Mich., P.C., 103 F.4th 1241, 1243 (6th Cir. 2024).
            Finally, in Passarella v. Aspirus, Inc., 108 F.4th 1005, 1009 (7th Cir. 2024), one plaintiff's "statement connects her objection to vaccination with her Christian beliefs regarding the sanctity of the human body," and the other plaintiff "expressly stated her Christian belief that the body is a 'temple of the Holy Spirit' in tandem with concerns about the potentially harmful effects of the vaccine."  The court held that "both exemption requests are based on their face and at least in part on a dimension of the plaintiffs' religious beliefs."  Id.
            Although we recognize that our Federal colleagues were addressing dismissals on the pleadings, we see no reason why their logic about the meaning of religious belief would not continue to the summary judgment stage.  A plaintiff, like the plaintiff here, who believes that she was created in God's image and that her body is a temple of God and thus needs God's approval to expose her body to foreign substances, expresses a religious belief.  Moreover, a plaintiff who prays to God and receives a "distinctive message from my God" acts in accordance with religious beliefs when she follows those divine instructions.
            To this, UMass Memorial interposes the objection that "this would create a blanket privilege allowing employees to opt out of any and all employer requirements simply by stating they prayed and received guidance."  Although UMass Memorial is free to argue to a jury that the plaintiff is not telling the truth, "[i]t is not permissible for a judge to determine what is or is not a matter of religious doctrine."  Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, 434 Mass. 141, 152 (2001).
            Finally, we reject UMass Memorial's argument that summary judgment on this issue is permissible because the plaintiff at her deposition described her religion as Voodooism but at one point stated that Voodooism is "not a religion."  She also described Voodooism as "spiritual," stated that the Holy Spirit lives in her, and discussed "hav[ing] to connect it with my -- with my god," "pray[ing] for connection," "pray[ing] in [my] sacred corner," becoming "one with the creator," and worshipping the "God of the sun, god of the earth, god of the universe, god of the protector."  Where there are contradictory statements within a single deposition and "the plaintiff had not made any 'clear election between versions,' any inconsistencies in her testimony 'create[d] a factual conflict that must be resolved by the jury.'"  Benvenuto v. 204 Hanover, LLC, 97 Mass. App. Ct. 140, 146 (2020), quoting Palermo v. Brennan, 41 Mass. App. Ct. 503, 508 (1996).
            4.  Reasonable accommodation.  Here, because UMass Memorial rejected the plaintiff's claim of a valid religious objection to vaccination, UMass Memorial did not seek to determine whether a reasonable accommodation was possible.  "In the absence of a search for a reasonable accommodation, an employer is required to 'conclusively demonstrate that all conceivable accommodations would impose an undue hardship on the course of its business.'"  Brown, 452 Mass. at 683, quoting Massachusetts Bay Transp. Auth., 450 Mass. at 342.  "An employer's mere contention that it could not reasonably accommodate an employee is insufficient, as is its mere speculation" (citations omitted).  Massachusetts Bay Transp. Auth., supra at 336.
            Here, the summary judgment record reveals a genuine issue of material fact regarding whether accommodating the plaintiff's religious beliefs would cause an undue hardship to UMass Memorial.  First, UMass Memorial's policy was to offer accommodations for employees' religious beliefs, which strongly suggests that it can do so without undue hardship.  Second, the plaintiff testified that three other hospitals had accommodated her not receiving the influenza vaccine.  Third, and most important, UMass Memorial simply failed to provide any evidence of undue hardship.  In the case relied upon by UMass Memorial, Together Employees v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 435 (D. Mass. 2021), the employees failed to demonstrate a likelihood of success on the merits adequate to obtain a preliminary injunction where the involved hospital provided a declaration from an epidemiologist that the hospital had consulted with experts and determined that "the requested accommodations would create a greater risk of COVID-19 infection in its facilities" and that social distancing and frequent testing would be ineffective.[12]  Here, UMass Memorial provided no such evidence.  Indeed, its own COVID-19 vaccination policy, which lists as reasonable accommodations masking, social distancing, and frequent testing, suggests that UMass Memorial's experts reached a contrary conclusion to that of Mass General Brigham.[13]
            Instead, UMass Memorial relies on the undisputed (and, frankly, undisputable) fact that "HealthAlliance's reputation would be affected if it did not take all measures necessary to protect its patients, staff, and the general public from COVID-19."  To the extent the accommodations listed above do not qualify as "all measures necessary" (emphasis added), the damage is already done, because UMass Memorial provided those accommodations to those employees whose religious exemptions it accommodated.  In any event, the Supreme Judicial Court has held that a claim that an accommodation would hurt an employer's public image is inadequate to show an undue hardship without proof that the employer would suffer concrete harm.  See Brown, 452 Mass. at 684-687.  Such proof is absent from the summary judgment record here.
            Finally, UMass Memorial suggests that its usual accommodations were unavailable because the plaintiff was a surgical technician.  Again, though, this distinction is unsupported by any affidavit or deposition testimony by any medical personnel.  Nor did UMass Memorial provide any evidence whether it granted such accommodations to surgical technicians or other operating room personnel who did receive medical or religious exemptions.  Moreover, one accommodation listed in UMass Memorial's policy is transfer to another job within the hospital, if available.  UMass Memorial provided no evidence, or even an assertion, that no other jobs were available for the plaintiff.
            5.  Joint employment.  The plaintiff admits that she was employed by the hospital, and it is uncontested that the hospital and UMass Memorial are separate legal entities.[14]  The plaintiff based her claim of UMass Memorial's liability on the doctrine of joint employment.[15]  Accordingly, we must consider whether, under the doctrine of joint employment, there is a genuine issue of material fact that UMass Memorial acted here as an "employer," thus subjecting it to liability for religious discrimination under G. L. c. 151B, § 4.  See Commodore v. Genesis Health Ventures, Inc., 63 Mass. App. Ct. 57, 62 (2005).
            "The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  Jinks v. Credico (USA) LLC, 488 Mass. 691, 699 (2021), quoting Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 n.4 (6th Cir. 1997).  "The elements of shared control and benefit characterize joint employment."  Whitman's Case, 80 Mass. App. Ct. 348, 355 (2011).
            "[W]hether a company is a joint employer is determined 'by examining the totality of the circumstances of the parties' working relationship, guided by a useful framework of four factors:  "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."'"  Tran v. Jennings Rd. Mgt. Corp., 104 Mass. App. Ct. 276, 280 (2024), quoting Jinks, 488 Mass. at 703.  "No one factor is dispositive; instead, it is the totality of the circumstances that will determine whether an entity ought to be considered a joint employer."  Jinks, supra at 704.
            Here, at least so far as the summary judgment record reveals, none of these factors weigh against a finding of joint employment.  Although the hospital hired the plaintiff, it was UMass Memorial that fired the plaintiff.  See Tran, 104 Mass. App. Ct. at 283 (joint employment where joint employer was "involved in disciplinary decisions").  Contrast Jinks, 488 Mass. at 705 (no joint employment where direct employer had "exclusive right" to discharge employees).  The only condition of employment revealed in the summary judgment record was the vaccination requirement, which was set by UMass Memorial.  See Tran, supra (joint employment where direct employer sets work schedule but only in compliance with joint employer's policies).  The only employment records in the summary judgment record were authenticated by a UMass Memorial employee and all appear to have been maintained by UMass Memorial human resources.  See id. at 280, 284-285 (maintenance of employment records supports finding of joint employment).  Nothing in the summary judgment record reveals whether UMass Memorial or the hospital set the plaintiff's compensation.
            It is true that the vice-president of labor and employee relations for UMass Memorial signed an affidavit stating that "UMass Memorial Health Care:  has no employees; does not control or direct the work performed by the employees of its subsidiaries; has no involvement in managing or supervising the employees of its subsidiaries; has no control over work assignments of its subsidiaries' employees; and does not hire, fire, or discipline its subsidiaries' employees."  Many of these assertions are not merely contested, but contradicted by the vice-president's own statements.  Despite attesting that UMass Memorial has no employees, the same vice-president testified in his deposition that he was an employee of UMass Memorial, and he identified at least one other employee.[16]  He attested that UMass Memorial has no involvement in managing hospital employees, but testified to "overseeing the labor and employee relations function for the UMass system."  See Tran, 104 Mass. App. Ct. at 282 (joint employment where joint employer "administers human resources" at affiliate).  Accord Pettiford v. Branded Mgt. Group, LLC, 104 Mass. App. Ct. 287, 302 (2024) (provision of management services "as well as the common ownership and management" may make out joint employment).  The contemporaneous termination letter provided to the plaintiff stated that she was being "separated from employment with UMass Memorial Health."  This letter firing the plaintiff was signed by the same vice-president who attested that UMass Memorial does not fire hospital employees.  In short, the vice-president's affidavit was inadequate to dispel a genuine issue of material fact.  See G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 266 n.1 (1991) (affidavit contradicted by records).
            The underlying problem is that the summary judgment record reveals very little about the relationship between UMass Memorial and the hospital outside of the single affidavit containing numerous contradictions and the contemporaneous termination letter that unambiguously identifies the plaintiff as an employee of UMass Memorial.  Thus, given "the gaps in the record, and the fact-sensitive nature of the joint employer determination, it is not correct to conclude that [the plaintiff] has no reasonable expectation of proving that [UMass Memorial] was a joint employer."  Commodore, 63 Mass. App. Ct. at 65.  A jury presented with only the evidence in the summary judgment record would be well justified in concluding that UMass Memorial was the plaintiff's joint employer.[17]
Judgment reversed.
 
footnotes

 
            [1] By statute, the defendant's legal name is actually UMass Memorial Health Care, Inc., St. 1997, c. 163, § 3, although its vice-president of labor and employee relations also describes it as "UMass Memorial Health Care system," as the caption of the complaint states.  In any event, "[a]s is our custom, we refer to this defendant by the name appearing in the plaintiff's complaint."  Boursiquot v. United Healthcare Servs. of Del., Inc., 98 Mass. App. Ct. 624, 624 n.1 (2020).
            [2] Such a vaccination requirement for healthcare workers would soon be required by Federal law.  See Biden v. Missouri, 595 U.S. 87, 89 (2022).  The Federal requirement allowed for medical and religious exemptions.  Id.  The record reflects that UMass Memorial adopted its policy in response to the upcoming Federal requirements.
            [3] Lest we forget, the Moderna and Pfizer vaccines required two doses; the Johnson & Johnson vaccine required only one dose.  See Committee for Pub. Counsel Servs. v. Barnstable County Sheriff's Office, 488 Mass. 460, 467 (2021); 86 Fed. Reg. 61555, 61562-61563 (2021).
            [4] It is important to understand that English is not the plaintiff's primary language.
            [5] Although the Moderna and Pfizer vaccines use messenger RNA (ribonucleic acid), they do not genetically alter the recipient.  See Centers for Disease Control and Prevention, COVID-19 Vaccine Basics (Sept. 3, 2024) (available at https://www.cdc.gov/covid/vaccines/how-they-work.html [https://perma.cc/NLG2-K4CS]).  Again, because English is not the plaintiff's primary language, it is not evident that she meant to assert that.  In her deposition she stated both that she believes that and that she does not believe that.
            [6] The New Revised Standard Version of the Bible translates the Hebrew as, "So God created humankind in his image, in the image of God he created them; male and female he created them."
            [7] "Or do you not know that your body is a temple of the Holy Spirit within you, which you have from God, and that you are not your own?  For you were bought with a price; therefore glorify God in your body."
            [8] Similarly, "[i]t shall be an unlawful practice:  1.  For an employer, by himself or his agent, because of the . . . religious creed . . . of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."  G. L. c. 151B, § 4 (1).
            [9] The statutory scheme provides special procedures, not relevant here, when the religious practice requires the employee to be absent from work on certain days, such as Sabbath observance.  G. L. c. 151B, § 4 (1A).
            [10] The parties disagree, without citing any published case law, whether the discrimination case must be proved on the basis of the plaintiff's pretermination statements to the employer, or if her subsequent statements at her deposition may be used.  The question is not as simple as it sounds, as we would have to consider the extent to which the employer had a duty to seek clarification from the employee about the basis of her beliefs.  Because our disposition is in favor of the plaintiff, we assume, without deciding, that UMass Memorial is correct, and the statements in the plaintiff's accommodation request must be sufficient in themselves to show that her beliefs were religious in nature.  We discuss the deposition statements for additional background.
            [11] The Superior Court judge did not have the benefit of the Federal appellate cases discussed here.
            [12] In addition, the case involved a claim under Federal law which, at that point, defined an undue hardship as anything that "would impose more than a de minimis cost on the employer."  Together Employees, 573 F. Supp. 3d at 441, quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 134 (1st Cir. 2004), cert. denied, 545 U.S. 1131 (2005).  The United States Supreme Court subsequently rejected that formulation in favor of "a burden [that] is substantial in the overall context of an employer's business."  Groff v. DeJoy, 600 U.S. 447, 468 (2023).
            [13] In Melino v. Boston Med. Ctr., 127 F.4th 391, 397 (1st Cir. 2025), unlike here, the plaintiff conceded "that [the hospital] could establish undue hardship '[i]f the vaccines worked,'" and thus the court did not have to consider whether the hospital had demonstrated an undue hardship.  Furthermore, the plaintiff there waived any claim to an accommodation "beyond . . . complete exemption."  Id. at 398.
            [14] The authorizing legislation contemplated that UMass Memorial would be the parent corporation of other corporations.  See St. 1997, c. 163, §§ 3, 4 (d).
            [15] The plaintiff does not assert that she was also a direct employee of UMass Memorial, as her termination letter suggests.  She also does not assert liability by UMass Memorial on the basis of the "integrated-enterprise test," and thus we do not address either of these theories of liability.  See Pettiford v. Branded Mgt. Group, LLC, 104 Mass. App. Ct. 287, 302 n.17 (2024).
            [16] Just as "[a] party cannot create a disputed issue of fact [simply] by . . . contradicting by affidavit statements previously made under oath at a deposition," Ortiz v. Morris, 97 Mass. App. Ct. 358, 362 (2020), quoting Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 58 (1997), a party cannot dispel a disputed issue of fact by writing an affidavit that contradicts that party's deposition statements.
            [17] Although this is a G. L. c. 151B case, the plaintiff properly does not request appellate attorney's fees at this stage.  See Brown, 452 Mass. at 689.