# United States Court of Appeals
## For the First Circuit

No. 24-1188

ASOCIACIÓN DE DETALLISTAS DE GASOLINA DE PUERTO RICO, INC.; A&E
SERVICE STATION, INC.; ANTONIO A. JUAN LEON; BAJURAS
DEVELOPMENT, INC.; SAMI DAVIS SULEIMAN ABDELMAJED; Q&P FUEL
MANAGEMENT, LLC; MEGA PUMA 129, INC.; MEGA JL, INC.; L&F SERVICE
STATION, INC.; JOSÉ J. ARROYO NOVOA, d/b/a Garage Arroyo; WCL
CORPORATION; MARACAIBO PETROLEUM, CORP.; ORLANDO GONZÁLEZ
HERNÁNDEZ, d/b/a Raholisa Service Station; MATILDE COLLAZO
VIERA, d/b/a Green Valley Service Station; JOSÉ A. COLÓN ALONSO,
d/b/a Mobil Orocovis, Shell Utuado, and Gulf Utuado; ONCE 11
CORP.; JANET TORRES PAGÁN, d/b/a Gulf Aibonito; R2 BUSINESS,
INC.; LUIS C. CRESPO ORTIZ, d/b/a Apolo Texaco; COOPERATIVA
GASOLINERA Y SERVICIOS BUENA VISTA,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF PUERTO RICO, represented by its Governor Hon.
Jenniffer González-Colón; HON. JANET PARRA MERCADO, as Interim
Attorney General of the Commonwealth of Puerto Rico; HON.
VALERIE RODRÍGUEZ ERAZO, as Secretary of the Department of
Consumer Affairs of Puerto Rico,

Defendants, Appellees.[*]

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

---

Before

---

[*] Public officers' successors have been automatically
substituted as parties pursuant to Federal Rules of Appellate
Procedure 43(c)(2).

Barron, <u>Chief Judge</u>,
Gelpí and Montecalvo, <u>Circuit Judges</u>.

---

<u>Andrés C. Gorbea-Del Valle</u> for appellants.

<u>Omar J. Andino-Figueroa</u>, Deputy Solicitor General, with whom <u>Fernando Figueroa-Santiago</u>, Solicitor General of Puerto Rico, and <u>Mariola Abreu-Acevedo</u>, Assistant Solicitor General, were on brief, for appellees.

---

May 29, 2025

---

**GELPÍ**, <u>Circuit Judge</u>.    Plaintiffs-Appellants are organizations and individuals who own or operate gasoline service stations throughout Puerto Rico, as well as a nonprofit corporation that represents more than 450 such businesses.  To reduce the transaction fees they owed to card companies, Appellants incentivized consumers to pay in cash by offering two different prices: a higher posted price for consumers using credit or debit cards and a lower price for those paying with cash.  In 2013, however, Puerto Rico's legislature enacted Law 152-2013, which amended Law 150-2008 by removing a provision that expressly permitted merchants to offer discounts to consumers who paid for goods and services in cash.  Since then, Appellants have ceased offering the lower posted price because of the threat of fines and criminal prosecution.  Appellants sued the Commonwealth of Puerto Rico ("the Commonwealth")[1] to enjoin Law 150, arguing first that it is preempted by federal law and second that it is unconstitutionally vague.  The district court rejected those arguments and granted the Commonwealth's motion to dismiss for failure to state a claim.  Appellants challenge that ruling on appeal, advancing the same arguments.

---

[1]    The Commonwealth is represented by the following individuals in their official capacity: Hon. Jenniffer González-Colón, Governor of Puerto Rico; Hon. Janet Parra Mercado, Interim Attorney General of Puerto Rico; and Hon. Valerie Rodríguez Erazo, Secretary of the Department of Consumer Affairs of Puerto Rico ("DACO," by its Spanish acronym).

For the reasons stated below, we **affirm**.

## I. BACKGROUND

We begin with a summary of the facts, taking "the complaint's well-pleaded facts as true" and drawing "all reasonable inferences in [Appellants'] favor." Frese v. Formella, 53 F.4th 1, 5 (1st Cir. 2022) (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

### A. Relevant Statutes

To place Appellants' preemption argument "in context, we provide a brief overview of applicable federal and state regulation and then trace the interaction of the two schemes." Grant's Dairy-Me., LLC. v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 11 (1st Cir. 2000).

#### i. Puerto Rico Regulation

Merchants generally pay a transaction fee to the card issuer every time a consumer uses a debit or credit card to pay for their goods and services. This "swipe fee," as it is commonly known within the credit card industry, typically ranges from 2% to 3% of the transaction total. To reduce the impact of the "swipe fee" expense, merchants sought to discourage customers from paying with a debit or credit card by charging a surcharge for card transactions or offering a discount for paying with cash.

The Puerto Rico legislature enacted Law 150-2008 ("Law 150") in 2008. P.R. Laws Ann. tit. 10, § 11 (2008). Article 1

- 4 -

provided, in relevant part, "[n]o merchant may impose a surcharge on a consumer who chooses to use a credit card instead of cash . . . ." Id. Article 2 stated, in relevant part, "[t]he merchant may, however, offer discounts for the purpose of promoting the payment in cash . . . ." Id. While Article 1 prohibited merchants from imposing credit card surcharges, Article 2 recognized a merchants' right to provide discounts to consumers who choose to pay for services in cash. Id. According to Article 4, merchants in violation of Law 150 "shall be penalized with" a fine of up to five hundred dollars ($500) or up to six months in prison, or both. Id.

Five years later, in 2013, the Puerto Rico legislature amended Law 150 with the enactment of Law 152-2013 ("Law 152"). P.R. Laws Ann. tit. 10, § 11 (2013). That law eliminated Article 2 of Law 150. Id. In repealing Article 2, the Puerto Rico legislature stated that its purpose was "to eliminate the duality and coexistence of parallel markets" and that it was fulfilling its duty to "protect the weakest party in a commercial transaction, the consumer." Id.

Pursuant to Law 152's amendment to Law 150, DACO promulgated Administrative Order 2014-002 ("Order 2014-002"). Aff., Order 2014-002 (Jan. 21, 2014), https://www.daco.pr.gov/orden/orden-2014-002/

- 5 -

[https://perma.cc/7EUM-4CR8].[2]  That order interpreted Law 152 as having eliminated "the use of discounts as an incentive to pay in cash" and, in turn, repealed or amended previous DACO orders pursuant to that interpretation.  Id. § II.

Appellants represent more than 450 retailers who own or operate over 600 gasoline stations in Puerto Rico.  The "swipe fee" is the fourth largest business expense for most Appellants.  To encourage cash payments, Appellants displayed dual prices for their goods and services: one price for costumers paying with a debit or credit card and a discounted price for those paying in cash.  Appellants subsequently sued the Commonwealth to prevent the enforcement of Law 150, as amended by Law 152.[3]

### ii. Federal Regulation

### a. TILA and the CDA

In 1968, Congress passed the Truth in Lending Act ("TILA"), Pub. L. No. 90-321, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. § 1601 et seq.), to promote the "informed use of credit" by consumers and, among other things, "assure a

---

[2]    Appellants have filed certified translations of all supporting materials originally produced in Spanish as required by the Jones Act, 48 U.S.C. § 864.  See United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.").

[3]    Henceforth, we refer to Law 150 to mean Law 150 as amended by Law 152 unless otherwise noted.

meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  Id. § 102.

Six years later, Congress amended the TILA through the Fair Credit Billing Act, Pub. L. No. 93-495, 88 Stat. 1511 (1974) (codified as amended at 15 U.S.C. § 1601 et seq.), to continue protecting "consumer[s] against inaccurate and unfair credit billing and credit card practices," id. § 102.  A key provision of the Fair Credit Billing Act provided that "card issuer[s] may not, by contract or otherwise, prohibit any [seller other than the card issuer] from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card."  Id. sec. 306, § 167(a).  The TILA defines "card issuer" as "any person who issues a credit card, or the agent of such person with respect to such card."  15 U.S.C. § 1602(o).

Later, in 1981, Congress amended the TILA once again with the passage of the Cash Discount Act ("CDA"), Pub. L. No. 97-25, 95 Stat. 144 (1981).  The CDA's stated purpose was "[t]o amend [the TILA] to encourage cash discounts, and for other purposes."  Id.  As relevant to this case, the CDA provides that any discount sellers offered to induce consumers to pay in cash does not "constitute a finance charge" if the discount is "offered to all prospective buyers and its availability is disclosed clearly and conspicuously."  Id. § 101(b) (codified as amended at 15 U.S.C.

- 7 -

§ 1666f(b)).  A "finance charge," as defined in the TILA, is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  Section 1666f(b) complemented other sections throughout the TILA which specify finance charges, among things like annual percentage rate, as information that creditors must "clearly and conspicuously" disclose to consumers.  Id. § 1632(a); see also id. §§ 1637, 1638 (disclosure requirements).

### b. Durbin Amendment

In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), to enhance accountability and transparency in the nation's financial system.  As part of Dodd-Frank, Congress also passed the Durbin Amendment, which modified the Electronic Fund Transfer Act, Pub. L. 95-630, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. 1693 et seq.).

The Durbin Amendment contains two key provisions related to cash discounts.  The first provides that a "payment card network shall not . . . inhibit the ability of any person to provide a discount or in-kind incentive for payment by the use of cash."  15 U.S.C. § 1693o-2(b)(2)(A).  The second provides that "the network may not penalize any person for the providing of a discount that is in compliance with Federal law and applicable State law."  Id.

§ 1693o-2(b)(2)(B).  The statute defines "payment card network" as "an entity that . . . provides the proprietary services, infrastructure, and software that route information and data to conduct debit card or credit card transaction authorization, clearance, and settlement."  Id. § 1693o-2(c)(11).

## B. Procedural History

Appellants first challenged Law 150 and Order 2014-002 in federal court on January 30, 2014.  Asociación de Detallistas de Gasolina de P.R., Inc. v. Commonwealth of Puerto Rico, 18 F.Supp.3d 99 (D.P.R. 2014).  At the time, Appellants argued that Law 150 was preempted by federal law and unconstitutionally vague under constitutional due process.  Id. at 100.  The Commonwealth moved to dismiss, arguing that the court should abstain from considering Appellants' vagueness claim under the Pullman abstention doctrine, which advises a federal court to abstain from considering a federal constitutional claim when it is based on an unsettled question of state law.  Id. at 101 (citing Texas v. Pullman, 312 U.S. 496 (1941)).  The district court agreed with the Commonwealth, finding the intent of the Puerto Rico legislature to be unclear "regarding the offering of cash discounts in repealing Article 2" since its stated goal in doing so "was to correct pricing disparity but also 'to protect the weakest party in a commercial transaction, the consumer.'"  Id. at 103 (quoting P.R. Laws Ann. tit. 10, § 11 (2013)).  So the district court concluded

that the Puerto Rico legislature's motive in amending Law 150 "must be subject to the interpretation of the state courts, as a federal judge should be hard-pressed to trailblaze undetermined state law, especially declaring the same unconstitutional." Id. Accordingly, the district court dismissed Appellants' claims, without prejudice. Id. at 105.

Following the district court's ruling, Appellants filed suit before the Puerto Rico Court of First Instance. See Asociación de Detallistas de Gasolina de P.R., Inc., et al. v. Estado Libre Asociado de P.R., et al., No. KAC2014-0539, 2016 WL 6471328, at *1 (P.R. Cir., Sept. 30, 2016), cert. denied, P.R. Supreme Court, No. CC-2017-0239. That court agreed with Appellants, holding that Law 150 did not prohibit the use of discounts as incentives for cash payments, if Appellants complied with the applicable signage requirements and/or regulations. Id. Accordingly, the court enjoined DACO from "impeding gasoline retailers from offering discounts on the price of gasoline when the payment method is in cash." Id. However, the Puerto Rico Court of Appeals reversed said judgment on September 30, 2016, finding that the Puerto Rico legislature "clearly intended to eliminate the possibility that two different prices for the same good or service could be imposed based solely on the method of

payment." Id., at *6. The Supreme Court of Puerto Rico declined to consider Appellants' appeal.

On April 11, 2023, Appellants renewed their federal suit to halt the enforcement of Law 150. Before the district court, Appellants argued that the CDA and the Durbin Amendment to Dodd-Frank recognized the right of retailers to offer discounts to customers who decide to pay for their products and services in cash. Thus, they argued, Law 150 presents an obstacle to accomplish the objectives of both federal laws and is accordingly preempted. The Commonwealth, in turn, moved to dismiss the complaint, contending that no conflict preemption exists between the CDA and the Durbin Amendment, on the one hand, and Law 150, on the other hand, since those federal statutes only regulate the relationship between card issuers and retailers and the relationship between payment card networks and retailers, not the relationship between retailers and consumers.

The district court sided with the Commonwealth, concluding that the CDA and the Durbin Amendment do not preempt Law 150. In so ruling, the district court noted that although the CDA's stated purpose is to "encourage cash discounts," a purpose statement cannot override a statute's operative language. Regarding the Durbin Amendment, the district court noted that its relevant provisions are directed at "payment card networks," not the states. Accordingly, the district court held that "neither

the plain language nor the objective of either the CDA or Durbin Amendment support[ed] Plaintiffs' theory of conflict preemption as to Law 150." The district court further declined to address Appellants' constitutional vagueness argument, finding that the complaint did not allege that Law 150 is unconstitutionally vague. In accordance with these findings, the district court granted the Commonwealth's motion to dismiss. Appellants timely appealed the district court's decision. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

"We review de novo a dismissal pursuant to Rule 12(b)(6)." Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76, 80 (1st Cir. 2025) (citing Lowe v. Mills, 68 F.4th 706, 713 (1st Cir. 2023)). When reviewing a district court's grant of a motion to dismiss for failure to state a claim, "we may affirm on any independently sufficient grounds made manifest by the record." Bower v. Egyptair Airlines Co., 731 F.3d 85, 92 (1st Cir. 2013).

## III. DISCUSSION

Appellants press two arguments on appeal. First, they argue that Law 150 frustrates the purposes of the CDA and the Durbin Amendment: namely, to encourage cash discounts by conferring upon merchants a right to offer discounts for cash payments. Because Puerto Rico law prohibits a practice that federal law encourages, Appellants assert, Law 150 conflicts with

- 12 -

federal law and thus is preempted.  Second, Appellants argue that Law 150 is unconstitutionally vague because it is not clear on the legality of cash payments.  We first consider their preemption argument.

## A. Preemption

The Supremacy Clause of the U.S. Constitution bestows upon Congress the power to preempt state laws.  See U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . ."); see also Me. Forest Prods. Council v. Cormier, 51 F.4th 1, 6 (1st Cir. 2022).  "For preemption purposes, the laws of Puerto Rico are the functional equivalent of state laws." Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012) (citing P.R. Dep't of Consumer Affs. v. Isla Petroleum Corp., 485 U.S. 495, 499 (1988)).

Preemption can be "expressed or implied."  Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli Hernández, 58 F.4th 5, 11 (1st Cir. 2023) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)).  Implied preemption can take one of two forms:  field preemption or obstacle preemption.  Obstacle preemption occurs "either when compliance with both state and federal regulations is impossible or when state law interposes an obstacle to the achievement of Congress's discernible objectives."  Grant's Dairy-Me., LLC, 232 F.3d at 15 (citing Gade, 505 U.S. at 98).  "Cases of obstacle preemption (like

- 13 -

all forms of preemption) fit into the following mold: 'Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted.'" Cormier, 51 F.4th at 6 (quoting Murphy v. Nat'l Collegiate Athletic Ass'n, 584 U.S. 453, 477 (2018)). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000) (emphasis added).

Here, Appellants argue only that Law 150 frustrates the objectives of both the CDA and the Durbin Amendment, which in Appellants' view is to encourage discounts for cash payments. Thus, only obstacle preemption is implicated here. With that framework in mind, we now turn to the text and purpose of the federal statutes, beginning with the CDA.

### i. CDA

Appellants first argue that the purposes of the CDA and Law 150 are obviously in conflict, pointing to the expressly stated purpose of the CDA as proof of Congress's unambiguous intent to preempt any laws that prohibits discounts for cash payments. See Cash Discount Act, Pub. L. No. 97-25, 95 Stat. 144, 144 (1981) ("To amend the Truth in Lending Act to encourage cash discounts,

- 14 -

and for other purposes." (emphasis added)). But our inquiry into congressional intent does not end with a statute's statement of purpose. See Sturgeon v. Frost, 587 U.S. 28, 56–57 (2019) (explaining that statements of purpose "cannot override [a statute's] operative language" (alteration in the original) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 220 (2012)). Thus, we must analyze the operative language of the statute.

The CDA, by amending the TILA, seeks to "encourage cash discounts" by, among other things, clarifying that any discount sellers offered to induce consumers to pay in cash would not "constitute a finance charge" if certain conditions were met. 15 U.S.C. § 1666f(b). The TILA requires creditors to disclose the "finance charge" to consumers. Id. § 1632(a); see also id. §§ 1637, 1638 (disclosure requirements). By amending the TILA to allow any cash discount to be excluded from the "finance charge" if "such discount is offered to all prospective buyers and its availability is disclosed clearly and conspicuously," Cash Discount Act, § 101, the CDA relieves credit card issuers of the obligation to disclose -- as part of the "finance charge" -- any price differential between the cash price and the credit card price that results from such cash discounts. The CDA thereby allows

sellers to offer cash discounts that they previously would not have been able to offer. See S. Rep. No. 97-23, at 1-2 (1981).

Read in context and in relevant part, it is evident that Congress intended for the TILA, the statute which the CDA amended, to regulate the conduct of credit card issuers and entities like them with respect to cash discounts -- not merchants, states, or territories. Congress's intent is evidenced by section 1666f(a), which clearly identifies card issuers, and section 1666f(b), which regulates what is and is not a finance charge, a matter most relevant to credit issuers. As the Commonwealth is not a credit card issuer as defined in section 1602(o), nothing in the TILA (or the CDA) prevents it from prohibiting merchants to offer discounts to consumers who pay in cash. Hence, insofar as those provisions are relevant to assessing Congress's objectives in enacting the CDA, they at most provide support for the conclusion that Congress's purpose was to encourage cash discounts by regulating the conduct of card issuers. And Law 150 does not pose an obstacle to the accomplishment of that objective.

Appellants also aver that the CDA creates a right for merchants to offer discounts in exchange for cash payments. If so, Law 150 would be clearly preempted by denying a right conferred in federal law. Appellants point to Section 1666f(b) of the TILA, as amended by section 101(b) of the CDA, to support their claim. That section of the CDA, however, simply clarified that any

discount sellers offered to induce consumers to pay in cash would not "constitute a finance charge" if certain conditions were met. Cash Discount Act, § 101(b). Thus, the operative language of the CDA does not support Appellants' contention that it conferred upon merchants an absolute right to offer cash discounts. Since the CDA did not create such a right, the federal statute can coexist with Law 150. For these reasons, the CDA does not preempt Law 150.

### ii. Durbin Amendment

Next, we consider whether the Durbin Amendment preempts Law 150, beginning with its text. The Durbin Amendment provides that "[a] payment card network shall not . . . inhibit the ability of any person to provide a discount or in-kind incentive for payment by the use of cash." 15 U.S.C. § 1693o-2(b)(2)(A) (emphasis added). A "payment card network" is statutorily defined as "an entity that . . . provides the proprietary services, infrastructure, and software that route information and data to conduct debit card or credit card transaction authorization, clearance, and settlement." 15 U.S.C. § 1693o-2(c)(11). The operative statutory language thus makes clear that Congress did not intend for the Durbin Amendment to grant merchants an absolute right to offer cash discounts. Rather, Congress intended to regulate the conduct of payment card networks -- i.e., to prohibit such networks from preventing merchants from offering a discounted

- 17 -

price to customers who paid in cash for their services. Because the text of the statute is clear as to the identity of the party it is meant to regulate, that is where our inquiry ends. See Nat'l Ass'n of Mfrs. v. Dep't of Def., 583 U.S. 109, 127 (2018) (affirming that our inquiry begins and ends with the statutory text if a provision is unambiguous). The Durbin Amendment does not preempt Law 150.

Still, Appellants insist that Law 150 undermines the "objective and purpose" of the Durbin Amendment. Appellants point to statements from Senator Durbin to suggest that Congress adopted the Durbin Amendment to "give small businesses and merchants and their customers across America a real chance in the fight against the outrageously high swipe fees charged by Visa and Mastercard Credit card companies." 156 Cong. Rec. S4977 (daily ed. June 16, 2010) (statement of Sen. Durbin); 156 Cong. Rec. S4839 (daily ed. June 10, 2010) (statement of Sen. Durbin). Inasmuch as Law 150 prohibits cash discounts, Appellants argue, the law constitutes an obstacle to accomplishing Congress's objectives. But, as explained above, the Durbin Amendment regulates the conduct of credit card payment networks, not the states. Thus, we see no basis to conclude that the Durbin Amendment evinces Congress's intent to encourage cash discounts by preempting any state

legislation that restricts the ability of merchants to offer such discounts.

## B. Constitutional Vagueness

Last, Appellants argue that Law 150 is unconstitutionally vague in violation of constitutional due process. The district court declined to consider this argument, however, concluding that Appellants failed to properly allege in its complaint that Law 150 was unconstitutionally vague. Appellants now contend that they plausibly pleaded a constitutional vagueness argument in paragraph 41 of the complaint. Paragraph 41 asserts in relevant part that "Law 152-2013 did not prohibit retailers from offering discounts to consumers who chose to pay in cash; the law simply eliminated the article that established said right." Such a pleading is insufficient to preserve the issue on appeal. As we have repeated with regularity, "litigants must spell out their legal theories face-up and squarely in the trial court" to preserve the issue. Massó-Torrellas v. Mun. of Toa Alta, 845 F.3d 461, 466 (1st Cir. 2017) (quoting Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008)). Because Appellants did not properly plead a vagueness claim in their complaint, that claim is deemed unpreserved for purposes of appellate review.

## IV. CONCLUSION

For the foregoing reasons, we **<u>affirm</u>** the district court's grant of the Commonwealth's motion to dismiss.